## BIGELOW, BROTHERS, & KENNARD *v.* LAFAYETTE DENISON.

*Adoption of unauthorized act of agent. When suit may be commenced.*

If one promise to pay a note, to which his name has been signed by one assuming, without authority, to act as his agent, it is an adoption of the act of the agent, and is, in law, equivalent to an antecedent authority to execute the note.

And it is no defence to an action upon the note, that the promise of the defendant, upon which the plaintiff relies as a ratification of the act of the agent, was a promise to pay the note, if the plaintiff would wait until a certain time for payment, and that the suit was commenced previous to the time named.

ASSUMPSIT upon a promissory note, and for goods sold and delivered. Plea, the general issue, and trial by jury, June Term, 1851, —POLAND, J., presiding.

On trial the plaintiffs gave in evidence a note for $279,75, dated December 11, 1847, payable to the plaintiffs in six months, purporting to be signed by B. F. Denison as attorney for the defendant, and also a power of attorney, executed by the defendant to B. F. Denison, dated November 16, 1847. The plaintiffs also gave evidence tending to prove, that in December, 1847, B. F. Denison sent to the defendant two· of the gold watches, upon the purchase of which of the plaintiffs the note in question was executed, one valued at $70,00 and the other at about $50,00; and they also gave in evidence a letter, dated July 5, 1848, which was written to them by the defendant and was duly received by them, and which was in these words :—

· " Burke, July 5, 1848. Gentlemen, sirs :—I received your letter " of June the 29th, relating to the payment of my note, signed by " my attorney, B. F. Denison,—and I make no delay in writing to " you, to inform you of your disappointment, as well as mine, in re- " gard to this matter. In the first place my brother deceived me; " he told me to get the deed of this land of my father, that he would " mortgage it for money which he wished to obtain, and for which " he would give his own note until it was paid, when I could again " hold the land,—but instead of that he mortgaged it for those " watches, which I did not want, and which I could not dispose of " for the first cost,—gave my note instead of his, and sent them to " me. Now, gentlemen, I cannot raise the money to pay my note, " and what to do I know not. Father, when he found what was " done with the land, was very indignant—and says he will never " give me a deed of one cent of his property until that note is paid, " and taken up. · I am a young man, and rather than to have my " note out before the public, have come to this conclusion,—that if " you will take a right-out deed of the land, and give up my note, I " will deed it to you without any farther cost or trouble to you, than " to send the note up to Burke, by some of the merchants, whom· " you may appoint your agents, and I will deliver the deed to them, " leave a copy in the town clerk's office, and thus settle it up.

" If you do not see fit to take the land for the note, hold on to the

" note until spring, when I can see my brother, and we will try to " pay it,—but I cannot before.

" You have a mortgage of lots No. 57 and 99 of the second divis-" ion of land. The town is divided into lots of land, according to " its value,—the best in the first division, the next best in the second " division, and so on to the fifth division, which is the poorest. Mr. " Chandler, a land speculator, who owns some 15 or 20 lots in town, " says there is 113 acres in each lot; the town clerk says there is " but 108, which would make 216 acres; and he has told me fre-" quently, since he recorded your mortgage deed, that it was worth " $1,50 per acre.

" I shall leave Burke soon after you receive this letter for Ohio, " and leave my deed of the land with my brother in Burke. If you " conclude to take the land, he will attend to settle with you. I " shall stay in town about two ——. If you write within that time, " I shall know immediately the result. Your most obedient servant,
                " L. F. DENISON."

The defendant gave evidence tending to prove, that the $70,00 watch was sent to him by B. F. Denison, together with $100,00 in money, to be by him delivered to his father, George W. Denison, to enable his father to pay a note for $200 to Caledonia Bank, which he had signed as surety for B. F. Denison, and that he delivered the watch and money to his father for that purpose, agreeably to the directions of B. F. Denison.

The court charged the jury, that the power of attorney conferred no authority upon B. F. Denison to execute a note for and on be-half of the defendant; and that the defendant would not be liable upon the count for goods sold and delivered beyond the actual re-ceipt of the goods, nor to any extent upon this count in the declaration, if the defendant, at the time he received the watches, was ignorant of the manner in which they were obtained by B. F. Denison; but that, if the evidence satisfied them, that the defendant wrote and sent to the plaintiffs the letter dated July 5, 1848, it was such a rat-ification of the acts and doing of B. F. Denison, as in law would make the defendant liable to pay the note.

The jury returned a verdict for the plaintiffs, for the full amount of the note; and the defendant excepted to the last clause in the charge of the court.

*T. Bartlett, Jr., Bingham and Roberts* for defendant.

The case shows, that B. F. Denison had no authority to sign a note for the defendant, and hence the note, as to the defendant, was absolutely void; Story on Cont. § 298; *Batty* v. *Carswell,* 2 Johns. 48; *Mixon* v. *Hyserott,* 5 Johns. 57; *Beals* v. *Allen,* 18 Johns. 363; and the note being void, no subsequent ratification would make it operative. Story on Cont. § 312. But the law of agency does not strictly apply to the case; for B. F. Denison was in no sense the agent of the defendant, either general or special, and the defendant was no more bound by the transaction, than any other stranger. And the defendant, having no interest in the transaction and not being bound by it, would not be bound by an express promise to pay the note. But if the note should be held voidable merely, the language of the entire letter does not amount to such ratification, as will make the defendant liable. And if held a ratification, it was yet subject to the condition annexed, that the plaintiffs should delay payment until the ensuing spring, instead of sueing immediately. The defendant's offer was in the nature of an offer of compromise, which was rejected by the plaintiffs; for they must accept or reject the offer *in toto,* and not in part. This was a promise to pay the debt of B. F. Denison in consideration of forbearance, and the consideration has failed.

———————— for plaintiffs.

The opinion of the court was delivered by

KELLOGG, J. The only question, presented for consideration in this case, arises upon the charge of the county court. The court charged the jury, "that if they were satisfied, that the defendant wrote and sent to the plaintiffs a certain letter referred to, it was such a ratification of the acts and doings of B. F. Denison, as would, in law, make the defendant liable to pay the note;" and to this part of the charge exception was taken by the defendant.

In the letter referred to, dated July 5, 1848, the defendant speaks of the note as "*my note,*" and says, "I cannot raise the money to pay *my note,* and what to do I know not." He speaks of his father being indignant, that the land was mortgaged for the watches, and that he would never give him any property, until the note was paid

and taken up. The defendant offers to deed the land to the plaintiffs, which was mortgaged for the payment of the note, and, if they are not willing to do that, requests them to hold on to the note until the spring and he and his brother would try to pay it. The defendant does indeed in the letter complain, that his brother had deceived him ; but he no where in the letter repudiates the contract, or refuses to pay the note, or denies the authority of his brother to make the note, but on the contrary requests the plaintiffs to retain the note and he will endeavor to pay it the next spring. This, we think, was at least an adoption by the defendant of the act of B. F. Denison in giving the note, and is, in law, equivalent to an antecedent authority to execute the same. Indeed, it seems to us to amount to an admission of the right of B. F. Denison to execute the note in question.

But it is said, that a suit could not be instituted for the recovery of the amount, until the expiration of the time specified in the letter, in which the defendant promised he would pay it. If the suit were founded upon the defendant's promise contained in the letter, the objection, it is conceded, would be well taken. But the suit is founded upon the note, and the letter is only resorted to as showing the defendant's acquiescence in the execution of the note by his brother, and an admission that he had authority to make the same. We regard the charge as unexceptionable.

The judgment below is therefore affirmed.