THE NATIONAL BANK OF ORLEANS *v.* JOHN B. FASSETT.

*Ratification. Estoppel. Promissory Note. Agency.*

The defendant's wife in March took the note of a corporation, called the "*Boston Lumber Company*," payable on the 8th day of June, instead of taking the money as she had been requested by the defendant for a debt due him, and was told by the clerk of the Company that she could get the money at the plaintiffs' bank by putting her husband's name on the paper, she not knowing what it was; and the plaintiffs discounted the note on presentation by her, so indorsed. This indorsement was made by the defendant's wife without knowing the object or effect of the same, and was unauthorized by him and without his knowledge until the 22d of May thereafter, when said Company being in process of failing, he first learned the fact as to the indorsement, but withheld this knowledge from the Bank until he received notice of protest when the note fell due, and then for the first time apprised the Bank of the unauthorized use of his name, and soon after denied his liability as indorser, but retained the money received on the note. *Held*, that these facts constituted a ratification by the defendant of the indorsement 'by his wife, and that the jury should have been so instructed, as matter of law.

ASSUMPSIT on a promissory note, dated March 4, 1867, executed by James H. Collins, as treasurer of the Boston Lumber Company, in behalf of said company, payable to the defendant Fassett or order at the Suffolk · Bank three months from date, and purported to be endorsed by the defendant. In some of the counts the note was declared on as having been executed by the Boston Lumber Company, and in other counts as executed by James H. Collins. The defendant in the special counts was declared against as endorser. The declaration also contained the general money counts for money lent, and money had and received. Plea, the general issue. Trial by jury, June term, 1868, PECK, J., presiding. Verdict for the defendant.

It appeared that at the date of the note and for some short time before there was a company carrying on the lumber business at Irasburgh village calling itself the " *Boston Lumber Company*," and carrying on the business in that name and professing to be a ·corporation incorporated by the laws of Massachusetts under that name. The business of the company was buying lumber and sawing it at their mills here and sending to the city markets, and was managed here by agents, the officers and stockholders residing out of the state.

The bill of exceptions referred to the judge's minutes of the testimony taken on the trial, which were voluminous, for a presentation of the facts; and from said minutes the following statement is made, which seems to be all that is necessary in order to show the ground of the decision of the supreme court upon the views set forth in the opinion.

It appeared that the defendant had been having dealings with said Lumber Company, and on the 4th of March, 1867, there was due to him about $300 ; that shortly prior to that time he had applied to the company for money, and some talk was had about getting it at the bank on a note of the company endorsed by two other persons interested in the company and by the defendant, but the matter was not consummated and was left open, the defendant expecting some arrangement would be made by which the money would be raised for him. On the 4th of March, his wife was going to the village and would pass near to the office of the company

and he directed her to call at the office and enquire about his matters and they would tell her, and if there was any money there for him she could bring it to him, he hoping and expecting they had got the money and would send it to him by her. She called and made the enquiry. The clerk told her that there was a paper there, that it would be necessary for her to sign her husband's name to in order to get the money, telling her where to put the name, and she put it as directed, and the clerk went with her to the bank and got the money on that paper, it being the note in suit with the defendant's name as endorser put on it as aforesaid by his wife. The wife did not know what the paper was that she thus put her husband's name to, but supposed in was a receipt or some kind of paper to show that her husband had got the money. She carried the money to her husband and told him what had taken place, but he did not know or suspect that she had put his name on a note as endorser, but supposed the paper was a check or something of the kind. The matter thus rested till the 22d day of May, on which day the Lumber Company were in the process of failing and did fail, being insolvent. About noon of that day the defendant for the first time learned that the paper his wife put his name upon was the note in suit, and he then learned all the facts about it. Afterwards on the same day in the village where the bank is located he had conversation with Mr. Worthington about the matter and told him all the facts, and asked his opinion whether he was liable on the note. Mr. Worthington expressed the opinion that he was not. The defendant then suggested whether he had not better go to the bank and tell them about it; that if they had his paper it was procured without his knowledge or consent and that he did not consider himself holden. Worthington replied no, that was no part of his duty; it was their business to see that they got good notes. The defendant also on that day talked with two other men about it. He did not go to the bank or say any thing to its officers about it till the 8th day of June. Worthington on the occasion of the talk on the 22d of May told the defendant that he was a stockholder in the bank; that was all the defendant knew about it. The defendant, as a witness on the

trial from whose testimony the above facts are stated, further testified:

"I don't think I told Worthington that day, (May 22d,) positively that I should not pay the note. I suppose the first time I told any officer of the bank that I should not pay it was when I got the notice of the protest, (the 8th of June.) I always thought if I was obliged to pay it I should defend it. I recollect telling Dennison (the cashier) that I wished a little time before he sued to consult counsel and find out whether I was liable. I talked with Mr. Prentiss (the attorney of the bank) but do not recollect as I told him I wanted a little time to get counsel before I made up my mind. I think I told him I had talked with somebody here in the village whether I better go and notify the bank and that they told me not to, and Mr. Prentiss told me they advised wrong. The time I received the notice of protest was but little while before sueing time was out for the next term, and I told Dennison I should like if he would defer the suit till I could consult counsel and get advice as to whether I was liable, and if sueing time run out I would accept service." "Dennison presented me with the notice of the protest, and said he had heard I was intending not to pay it. I told him I had had purposes of that kind. He told me he took the note entirely on the strength of my name. I told him if I was bound to pay it they could collect it. I can not say as at that time I said anything to indicate that I wanted any delay or that I intimated in any way that I was in doubt as to whether I should pay it. He said he had understood I did not intend to pay it, and I told him his information was correct, or to that amount."

No formal requests were made to the court to charge the jury, but the plaintiffs' counsel in argument to the jury assumed certain legal propositions as applicable to the case, and on which as a basis he argued the case to the jury. It was not claimed by the plaintiffs' counsel that the plaintiffs could have secured the debt or any part of it against the said company after the defendant was informed on the day of the failure of the company, May 22d, of the indorsement, and it was stated in argument to the jury by said counsel that the plaintiffs could not have secured the note because not due. Among other legal propositions the plaintiffs' counsel insisted that the defendant's silence and omission to notify the bank that he repudiated the endorsement, from the time he was informed on the

22d day of May of the endorsement till he had notice on the 8th of June of the dishonor of the note, was a ratification of the endorsement, because he did not seasonably express dissent. The court treated this as a request so to charge.

The court did not so charge, but told the jury that the court could not say that that neglect from the 22d of May to the 8th of June was necessarily as matter of law a ratification, but that it was evidence of a ratification by the defendant, and left it to the jury as a question of fact, the court having instructed the jury as to the effect of a ratification and what fact if found by them would amount to a ratification, so as to make the endorsement binding on the defendant. The plaintiffs' counsel excepted to the refusal of the court to instruct as requested and to the leaving of the question to the jury as a question of fact. The court charged the jury fully on the various aspects of the case, and no exceptions were taken by the plaintiffs' counsel except as above stated.

*J. H. Prentiss*, for the plaintiff, maintained that the defendant's wife was his agent for certain purposes and among others to get money for him, and was recognized as such by him, and on that ground was offered by him and admitted as a witness ; and cited upon the point of ratification, Dun. Pal. on Ag., 171, note *o* ; 1 Par. on Con., 51; 1 Liv., Pr. & Agt.,394 ; *Codwise* v. *Hacker*, 1 Caines, 526; *Clement* v. *Jones*, 12 Mass., 59 ; *Culver* v. *Ashley*, 19 Pick., 300 ; *Bredin* v. *Dubory*, 14 Serg. & Raw., 27 ; *Ward* v. *Evans*, 2 Salk., 442 ; *Benedict et al.* v. *Smith et al.*, 10 Paige, 127 ; *Cairnes* v. *Bleecker*, 12 Johns., 300 ; *McCulloch* v. *McKee*, 16 Penn., 289 ; *Ward* v. *Williams*, 26 Ill., 447 ; *Forsyth* v. *Day*, 46 Me., 176 ; *Rowe* v. *Jerome*, 18 Conn., 138; 2 Kent Com., 478; *Delafield* v. *State of Illinois*, 26 Wend., 192 ; *Bigelow* v. *Dennison*, 23 Vt., 564 ; *Commercial Bank* v. *Jones*, 18 Texas, 811 ; Sto. on *Ag.*, § 253.

*Edwards & Dickerman*, for the defendant.

The defendant's wife had no authority to indorse the note in question, nor did the indorsing of the note have any connection with the business she was authorized to transact. She did not

understand that she was indorsing her husband's name upon a note. The indorsement was entirely inoperative, and as though no indorsement had been made, both as to the defendant's wife and as to him. She did not profess to act as agent in indorsing the note ; hence, if she did not indorse the note as, and for, her husband, there can be no presumption of ratification by mere silence. She supposed she was placing her husband's name upon a paper of an entirely different character. In law, it was no indorsement. In this particular the case differs from those where the professed agent acts understandingly, and a full knowledge of his acts comes home to the party for whom he professes to act. The indorsement made by Mrs. Fassett, being fraudulently obtained, was entirely nugatory, and, under the circumstances in this case, it would seem that it can only receive vitality and force by an express recognition by the defendant, and until such express recognition or adoption takes place, it has no force as to any one. Under the circumstances in this case, no liability could rest upon an agent, whether his act was or was not ratified. In ordinary cases, where the professed agent acts understandingly, he would be personally liable if his act was not ratified by the principal. But, however this may be, the case was properly put to the jury on the basis that an unreasonable delay in not repudiating the indorsement would work a ratification. 1 Am. Lead. Cas., 573 ; *Salem Bank* v. *Gloucester Bank*, 17 Mass., 1 ; *Amory* v. *Hamilton*, Ib., 103 ; *Page* v. *Stone*, 10 Met., 168 ; 19 Vt., 425.

The opinion of the court was delivered by

BARRETT, J. For the purposes of the question presented by the exceptions, it may be assumed that the putting of the defendant's name on the note as endorser was wholly unauthorized, and that he had no knowledge that his wife had done it till he was informed of it, in the manner as testified by him, on the 22d of May, and that he supposed the money brought to him by his wife in March was furnished to her by the Lumber Company, in payment of his debt against said company.

According to his own testimony, on said 22d day of May the defendant was fully informed that the $300 delivered to him by

his wife was obtained from the bank upon that note, with his own name thus put on it by his wife; and having been thus informed, and at the same time knowing that the Lumber Company was in the process of failing, he deliberately resolved to retain the money, and hold it as his own, and to withhold from the bank all knowledge of the facts as to the unauthorized use of his name on the note. The matter thus rested till the 8th day of June, when the note having fallen due, and been protested, and he then, as endorser being duly notified of such protest, apprised the bank for the first time of the unauthorized use of his name, and intimated his purpose to deny his liability as endorser, but still retained, and continues to retain, that money. Soon thereafter he explicitly denied such liability, and is resisting the enforcement of it in this suit.

The question presented by the exception is not the very common one of *estoppel in pais*, by reason of the plaintiff having been misled by the silence of the defendant on and after the 22d day of May, and thereby having suffered prejudice or loss in reference to opportunity and means of securing the debt against the Lumber Company; for the plaintiff could not have resorted to a suit upon the note till the 8th of June, when it became due. Yet it may be remarked that if, on the 22d day of May, the defendant had repudiated the act of his wife, and offered back the money to the bank instead of keeping it himself, the evidence tends strongly to show that he might by attachment have secured his original debt against the Lumber Company, especially as the attachment of another creditor, for about $6,000, failed. To what effect these facts might operate by way of *estoppel* we have no occasion now to suggest, for the question before us involves only the subject of *ratification* by the defendant of the act of his wife, operated by the facts stated by himself in testifying in the trial of the cause.

We understand that it has become elementary in the law, that when a party, knowing all the facts appertaining to an act done by another in his name without previous authority, avails himself of the beneficial results of that act, and asserts rights in himself resulting from it, he thereby ratifies such act, and makes it as ef-

fectually his own as if he had done it himself, or it had been done in pursuance of full authority conferred for that purpose on the party doing it. This idea is at the bottom of and runs through the entire subject, and a large body of cases of a person being bound by the acts of others done in his name and behalf without authority previously conferred.

. Involved in this doctrine, and constituting one of the moral elements of which the law takes cognizance in giving it practical effect, is the obvious duty of the party, whose name has been thus used and credit pledged, to disavow the act as soon as he shall have been informed of it, and to restore to the other party any thing which may have come to him of value or benefit from such other party, by reason of such unauthorized act, as far as practicable under the circumstances of the case.

In the present case, not only did the defendant not so do, but he deliberately retains the money, claiming it as his own. The governing principle is comprehensively stated in 2 Kent Com., 614, 615, 616 : " where the principal, with knowledge of all the facts, adopts or acquiesces in the acts done under an assumed agency, he cannot be heard afterwards to impeach them, under the pretense that they were done without authority, or even contrary to instructions." " When the principal has been informed of what has been done, he must dissent, and give notice of it in reasonable time ; and if he does not, his assent and ratification will be presumed." There is a just application of this doctrine in *Hovey* v. *Blanchard,* 13 N. H., 145.

The remaining question is whether the court should have instructed the jury upon the evidence that a ratification was shown. Upon an unquestioned state of facts, whether such facts operate a ratification is a question of law. This is implied in all the cases that are properly submitted to the jury on account of there being doubt and dispute about the facts ; for in such cases the court have to tell the jury, if they find such and such facts, they will find a ratification. The true doctrine on this subject is embodied and applied in *Bigelow et al.* v. *Dennison,* 23 Vt., 564.

In the present case, on the question of ratification, the plaintiffs had a right to stand on the facts as stated by the defendant him-

self in his testimony on the trial. Having received the money, we think what transpired on the 22d of May, and so on continuously down to the commencement of this suit, constituted in law a ratification of the act of his wife in putting his name upon the note. There was no dispute or doubt as to his intention after he was apprized fully on the 22d of May of all the facts appertaining to the subject, for he avowed by word and act his intention to keep the money, and he carried that intention into effect. There was no doubt or question as to reasonable time in which to notify the bank, and do what was necessary in order to make an effectual repudiation of the act of his wife; for he shows that, from the first, he had ample opportunity to do so ; but that he deliberately resolved not to notify the bank, till, on the 8th of June, when he received notice of the protest, he denied his liability, but still retained the money realized to him by virtue of the note as being rightfully entitled to it.

We think upon these facts, shown by the statements of the defendant in his testimony, it was the right of the plaintiffs to have the jury told that a ratification was shown. In the court's declining so to hold and instruct the jury, there was error.

The judgment of the county court is reversed, and the cause remanded.