No. 2389.—INDIANA SLOAN, Wife, etc., v. STEVENSON & MAY—LOUIS-
IANA STATE BANK called in warranty.

A contract of sale of a lot of cotton is complete if the price has been agreed upon and
    possession has been given. In such a case the sale is considered as executed, and the
    administrator of the estate who has made the contract will not be listened to when he
    comes into court and asks that it be set aside on the ground of an illegal consideration,
    such as Confederate money.

APPEAL from the Fourth District Court, parish of Orleans. *Théard*,
J. *Race, Foster & E. T. Merrick*, for plaintiffs and appellants.
*Clarke & Bayne*, for defendants and appellees.

LUDELING, C. J.   The plaintiffs sue the defendants to recover forty-
three bales of cotton or the damages occasioned them by the wrongful
taking of said cotton for defendants' use.

John A. Stevenson and A. H. May, who composed the firm of Steven-
son & May, filed separate answers.   Stevenson filed a general denial,
and admitted that the forty-three bales of cotton aforesaid had been
purchased by one Green, who transferred them to him ; that forty-one
bales of said cotton were delivered to him; that both he and Green
were agents for the Louisiana State Bank; and that the said forty-one
bales of cotton, having been accidentally shipped to Stevenson & May,
were delivered by them to the said bank; and he called the bank in
warranty.   May denies that he had anything to do with the cotton,
and reiterates the other allegations of Stevenson's answer.

The Louisiana State Bank filed an exception and answer.   The
exception seems to have been abandoned.   In the answer it is admit-
ted that Green and Stevenson were the agents of the bank, in the
purchase of the cotton, and that Stevenson & May had delivered the
cotton to the bank, the rightful owner thereof.

The evidence satisfies us that on the nineteenth of January, 1863,
the administrators of the estate of Sloan, E. A. Sloan and John Mc-
Laughlin, sold to J. J. Green, agent aforesaid, forty-three bales of cot-
ton at twelve cents per pound in Confederate treasury notes; that the
cotton was weighed, paid for, and marked in the name of the pur-
chaser, thus "J. J. G.," and that the vendors undertook to take care
of the cotton and to deliver it in good order at Augusta, on the lake,
at their own expense, to said Green or his order, the said vendors "not
incurring any risk of fire or unavoidable accidents;" that some time
afterward the bagging and ropes having been cut by Confederate
soldiers, and the cotton being in bad condition was taken by the agents
of Green or Stevenson off the Sloan plantation to an adjoining planta-
tion, where it was *rebaled* and carried back to the Sloan place, to be
taken care of; that the bagging and rope was furnished by Stevenson,
and the cotton was rebaled by his employes.   This was in January,
1865, and in consequence of a letter written by John McLaughlin to

an agent of Stevenson informing him of the condition of the cotton, and suggesting the propriety of his getting bagging and rope to have the cotton repaired. In the letter he expressed his readiness to haul the cotton to the place agreed on whenever required to do so. Subsequently when called on for the cotton, he refused to deliver it. However, after a considerable delay he did deliver the cotton, but instead of hauling the cotton without charge, as had been stipulated in the contract, Stevenson paid Mrs. Sloan $3 25 in gold per bale for the hauling. The cotton was shipped to Stevenson & May through error; it was delivered by them to the bank, and the bank had sold the cotton long before the institution of this suit.

Under this state of facts, the administrators and the heirs sue to recover the price of the cotton, on the grounds that the contract was null for the following reasons, to wit:

It was for Confederate money, it was between alien enemies, and it was a private sale of succession property.

It is proper here to state that the suit is brought in the name of the minor heirs of Hamilton Sloan, represented by their tutrix Eliza Sloan and Indiana Sloan, in their own right and by the administrators, Eliza Sloan and John McLaughlin, and that the succession was still under administration when the suit was instituted and tried.

The evidence shows that the contract was an executed contract before the institution of this suit; nay, even before the order of General Herron had been obtained. The written contract and evidence show that the cotton was sold by the pound, that it was weighed, paid for, and marked with the initials of the name of the buyer; and that the sellers obligated themselves to keep and take care of the property for him, and to haul it to a shipping port, whenever required to do so. McLaughlin says in the act that the cotton is "now *deposited on my plantation,* and I am to take due care of the same and to store it in a covered building," etc. And Mrs. Sloan signed the same act.

"*An authority to take,* when the thing sold is ponderous and present, has all the effect of an actual delivery." But in January, 1865, the employes of the buyer took *actual* possession of the cotton (with the consent of the sellers), hauled it to another place and rebaled it for the buyer; and then returned it to the *custody* of McLaughlin & Sloan for safe keeping. As balers and depositaries of Stevenson, McLaughlin & Sloan could not question his title. 21 An. 596.

The question of duress is not important in this case, as, in our opinion, the contract of sale had been executed long before; and therefore, to pretermit the expression of an opinion as to whether there was or was not force, violence or threats used to obtain the possession of the cotton from the depositaries.

The contract being executed, the administrators will not be listened

to in a court of justice, when alleging their own turpitude and dereliction of duty. 3 N. S. 47; Mulhollen *v.* Voorhies; 17 La. 132, Gravier's Curator *v.* Carraby's Executors; 2 Rob. 271; John Y. Davis *v.* J. H. Caldwell et al.; 1 An. 176, Davis *v.* Holbrok; 17 An. 261, Smidt *v.* Barker.

The heirs have no right to sue for debts or damages due to the estate while it is under administration, much less have they a right to sue a third party for damages caused the succession by buying from the administrators property at private sale. Their recourse is against the administrators and their sureties. C. C. art. 1058 (1051), 12 R. 41, 323; 10 R. 457, Succession of Ogden; C. C. art. 1048 (1041); C. P. 976, 997.

It is therefore ordered that the judgment appealed from be affirmed with costs.

Rehearing refused.