ROGERS, J.
 

 Plaintiff brought this suit to recover $3,833.80 with interest, based upon ten separate and distinct demands covering services performed and money advanced for
 
 *993
 
 account of defendant. The answer is, substantially, a general denial, coupled with an averment that a complete settlement was had between the parties of all matters in which they were jointly interested.
 

 After the completion of the testimony, and before the argument and submission of the case in the district court, defendant filed a plea of estoppel, in which he set forth that plaintiff was estopped from demanding the items claimed by him for the reason that the evidence showed he had made a compromise settlement and adjustment with the defendant of all claims and counterclaims between them, and that he did not present or demand the settlement of the items urged by him in this suit; and for the further reason that plaintiff was silent concerning these demands when he should have presented them; that -his'failure to present them, caused defendant to make the settlement shown to have been made between them, and that plaintiff cannot now take advantage of his silence and bring forward other claims.
 

 The plea of estoppel was sustained and plaintiff’s demands were rejected by the court below. From said judgment plaintiff is prosecuting the present appeal.
 

 Our conclusion is that the judge a quo was correct Jm sustaining the plea of estoppel. The evidence shows that plaintiff had been employed by defendant in various enterprises during a number of years. A settlement of the account between them seems to have been made on April 18, 1918. Plaintiff’s present demand is made up of transactions alleged to have occurred after that date, viz.: One in May, two in August, four in June, and one in September, 1918, and two in August, 1919.
 

 Early in the year 1919, the Homer oil field was opened up, and plaintiff suggested to defendant that defendant purchase some oil leases in Claiborne parish. Defendant reacted favorably to the suggestion, and an agreement was entered into between the parties, whereby defendant was to advance the money necessary to purchase the leases that plaintiff, who was to bear his own expenses, would secure; the profits to be divided equally. When the quantity of leases intended had been purchased, defendant was unwilling to carry the load for further purchases on the same basis, and it was then agreed plaintiff might buy more leases but that he would not have an equal interest in these additional purchases,, plaintiff being willing to leave the matter of his compensation therefor to defendant’s sense of right and justice.
 

 Dater the Claiborne parish leases were sold by defendant, and a settlement of accounts was effected between the parties. This settlement was arranged between plaintiff and the bookkeeper of defendant, and it tooir from April to June, 1920, to check up the account and strike a balance. The testimony of Mr. Dunn, defendant’s bookkeeper, as to the circumstances of this settlement, is as follows, viz.:
 

 “Q. Were you present at- any conversation between plaintiff and defendant relative to that account?
 

 “A. Well, we 'all three discussed it, and Mr. Atkins instructed me to make a full settlement with Mr. Woodley, to get up everything that Woodley claimed to date—left it up to Mr. Woodley and I. And we checked and rechecked these statements to arrive at some sort of final settlement.
 

 “Q. Did you have any understanding with the plaintiff as to what would be covered by that settlement?
 

 “A. Yes, if there was anything left out—I asked him if there was anything else, ánd he mentioned things, and I would note it and look it up and see if it was all right, and we would get together, and we were trying to arrive at a mutual understanding of the credit and charges.
 

 “Q. When you made up the account, did you ask him if he had any other claims?
 

 “A. I asked him if there\was anything else to be taken into consideration.
 

 “Q. Did you ask him more than once if that was his total claim?
 

 “A. I did, for this reason: In checking and rechecking I saw many of these statements in duplicates, and I would make notations on
 
 *995
 
 them, and we would get together and compare notes, in order to arrive at a mutual settlement.”
 

 The witness further testified that plaintiff never at any time brought up the items claimed in the present suit, and that the settlement which was made was understood to be full and final, and that plaintiff appeared to be satisfied therewith. The amount allowed plaintiff under this accounting was $16,375.30, and after deducting advances made to him aggreg'ating $8,761.08, he received a check for the balance, $7,696.30.
 

 Plaintiff argues that the plea of estoppel is not well founded because the doctrine of estoppel presupposes error on the part of one who has been misled and does not apply when everything is well known. The evidence, however, shows that defendant was not informed fully as to all of plaintiff’s claims; that plaintiff deliberately withheld from defendant the knowledge 'that he was reserving his claim for the items sued on in this case in order to obtain a larger return for his services in securing the leases in Claiborne parish. Defendant testifies positively that the general settlement with plaintiff was in the nature of a compromise, and that he made allowances to plaintiff in many instances which he would not have done if XDlaintiff had informed him that he was holding back his present claims. The instant suit was filed a few days less than three years from the date of the first item sued for, and about eleven months after the settlement was consummated. Plaintiff does not allege either error or fraud.
 

 “Where the account has been closed and settled, no suit can be maintained contrary to the balance, without alleging error or fraud in the settlement.” Succession of Marr, 23 La. Ann. 718; Sloan v. Stevenson,
 
 24
 
 La. Ann. 278; Haile v. McGhee, 29 La. Ann. 350.
 

 For the reasons assigned, the judgment appealed from is affirmed.