No. 5351.

W. H. HAILE, ADMINISTRATOR, vs. McGHEE, SNOWDEN & VIOLETT.

An administrator can not sue an alleged debtor of the succession, in disregard of his formal settlement with and discharge of the debtor, without alleging error, or fraud in the settlement.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier*, J.

*Hunton & Grover*, for plaintiff and appellee.

*Kennard, Howe & Prentiss*, for defendants.

The opinion of the court was delivered by

EGAN, J. The plaintiff, as the administrator of the succession of R. H. Haile, who died in August, 1872, and whose succession was opened in the parish of West Feliciana, sues the defendants for the proceeds of sixty bales of cotton, and of one-third of twenty bales, which, *as administrator*, he consigned to the defendants for sale, during the months of October, November, and December, 1872. The proceeds of this cotton is alleged in the petition to be $4933 25, received by defendants and not paid over.

Plaintiff alleges that the succession of R. H. Haile is insolvent, and that his duty as administrator requires him to collect the assets, and

that the defendants had no lien or privilege thereon for any claims due them from the succession.

The answer admits the receipt and sale of eighty bales of cotton as alleged, but avers that defendants made certain advances, and paid certain drafts, to enable R. H. Haile to raise the crop of cotton sold by them; that they had a privilege on the funds in their hands for the amount of their account, *and that they have accounted for, settled, and paid the amount due the plaintiff on account of the shipment of cotton.*

In support of the averment of full and complete settlement, the defendants filed in evidence the following receipt : " Received New Orleans, February 3, 1873, from McGhee, Snowden & Violett, ninety-three dollars 51-100, being in full of all transactions with estate R. H. Haile, Jr., to date. (Signed) W. B. Haile, Administrator." The plaintiff, who was a witness in the case, admits giving the receipt, and says he did not intend thereby to waive his right to demand from the defendants the proceeds of the cotton or to release them from their liability to account for and pay over the same which had been in part applied to the payment of the account of the deceased and of the succession with them. Neither the correctness of the accounts of sales of the cotton nor of the defendants' accounts are disputed.

The evidence satisfies us that the administrator knew what he was doing when the settlement was made and when the receipt was signed, and that the receipt was intended by both parties to close the accounts between them. The administrator accepted the accounts of defendants rendered and balanced in accordance with the settlement and receipt, and, so far as appears from the evidence, still retains them so closed and balanced. The good faith of the defendants in the settlement, or of the settlement itself is in no manner impugned, and it appears from the evidence that the matter of requiring the defendants to pay over the proceeds of the cotton first, and collect their debt afterward, was talked of between plaintiff and defendants in New Orleans at the time of the settlement in February, 1873, and that the administrator assured them they would hear no more of a suit for that purpose, which it appears defendants had heard was contemplated. This of itself would rebut the idea that there was error of fact on the part of the administrator in making the settlement, even had it been alleged, as it is not. The question in this case is not merely as to the right to explain or contradict a receipt for money. It is whether an administrator or any one else can be permitted to ignore a settlement with and payment to an acknowledged creditor, such as a factor or commission merchant, between whom and the succession there are cross accounts, to treat the matter as if there had been no settlement, and without either allegation or proof of error of fact or fraud to sue for an account and settlement, as though

none had been rendered or made. We think neither good faith nor law will permit this, and that the exceptions of defendants to the mode of proceeding adopted in this case were well taken, and should have been maintained both as regards the action and the evidence. With all the advantage, however, of the reception of evidence in the court below, regardless of their objections, the only thing which the plaintiff has been able to show to impeach the settlement deliberately made by him with the defendants, is that they may have been paid by the administrator more than their *pro rata* share of the succession funds. In the case of Sloan vs. Stevenson & May, 24 An. 278, a case of sale of cotton by an administratrix for Confederate money, the court held that " the contract being executed the administrators would not be listened to in a court of justice when alleging their own dereliction of duty." In the succession of Marr, 23 An. 718, it was held that the administrator is personally responsible to the heirs of the estate if he pays the same to one not authorized to receive; and the books are full of cases in which he and his bondsmen are held responsible to creditors for over-payments to other creditors or to persons not lawful creditors. It is this apprehension which is vainly confessed by the plaintiff, and which no doubt stimulated the bringing of the present suit. If the facts be so in this case, the other creditors have the double security and remedy to pursue the administrator and his bondsmen or the preferred creditor by an action of contribution. C. C. 1088 and 1188.

Had the plaintiff not made the settlement of February, 1873, or had that settlement been attacked on account of fraud or even of fact, the case might have been very different from that presented by this record. It is well settled as a general rule, as argued by the plaintiff, that a purchaser of succession property or a debtor of the succession can not plead in compensation when sued a debt due by the deceased to himself not legally liquidated or demandable before death. It is equally well settled that the rights of creditors are fixed at the death of the debtor as to all antecedent facts and rights. These principles can not, however, be applied to the facts in this case between the parties, and can not avail the plaintiff against his own solemn and deliberate act.

It is therefore ordered, adjudged, and decreed that the judgment of the court below be annulled, avoided, and reversed, and that there be judgment in favor of the defendants, rejecting the plaintiff's demand, with costs of both courts.