[No. 1202.]

ELLEN ADAMS, ADMINISTRATRIX, RESPONDENT, v. CYRUS SMITH, APPELLANT.

ESTATE OF DECEASED PERSONS—ADMINISTRATRIX—VOLUNTARY PAYMENT OF CLAIM NOT PRESENTED FOR ALLOWANCE—MONEY CANNOT BE RECOVERED BACK.—Where an administratrix of an estate, upon a full knowledge of all the facts, without any fraud or deceit, voluntarily pays a debt legally due from the estate, which was never presented for allowance, she cannot, thereafter, recover back the amount thus.

IDEM—COLLECTION OF RENTS—POWER OF ATTORNEY—PRINCIPAL AND AGENT —RATIFICATION.—Action by administratrix of estate of C. P. Adams to recover money collected by U. Smith from rents of a certain building, under power of attorney from plaintiff: *Held*, upon a review of the evidence, that the title of the property was in the estate of C. P. Adams during the period of the collection of rents by U. Smith; that U. Smith was defendant's agent—under the power of attorney executed by plaintiff —and that the acts of the agent were ratified by the defendant.

IDEM—EVIDENCE—JUDGMENT ROLL—TITLE—AGENCY.—*Held*, that the judgment roll in a prior suit between the same parties, for two months' rent of the same building, was admissible in evidence to prove the title to the property, the agency of U. Smith, and the ratification of his acts by the defendant.

UPON REHEARING—COMPLAINT—RECOVERY BACK OF MONEY PAID—ALLEGATIONS—EVIDENCE.—If a man pays money in satisfaction of a claim, in order to recover it back he must allege facts justifying such recovery, and, if the facts are denied, he must prove them. If he relies upon deception and fraud, he must allege them. If he alleges simply that he paid a sum of money, and asks that he may recover it back, without showing any good reason in law why it should be returned to him, he states no cause of action.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*Trenmor Coffin*, for Appellant:

I. An estoppel, by judgment or otherwise, to be available

in an action, must be pleaded, and by failure to plead any estoppel plaintiff waived it, and it was error to admit the judgment roll in evidence against the objection of defendant for any purpose of estoppel. (*Sharon* v. *Minnock*, 6 Nev. 378; *Hanson* v. *Chiatovich*, 13 Nev. 395; *Hostler* v. *Hayes*, 3 Cal. 302; *Flandreau* v. *Downey*, 23 Cal. 357; *Davis* v. *Davis*, 26 Cal. 23;[1] *Clarke* v. *Huber*, 25 Cal. 593; *Davis* v. *Perley*, 30 Cal. 635; *Jones* v. *City of Petaluma*, 36 Cal. 231; *Hendricks* v. *Decker*, 35 Barb. 302; 21 Am. Dec. 327, note; Big. on Est. 519; *Wood* v. *Ostrom*, 29 Ind. 177; *Ransom* v. *Stanberry*, 22 Iowa, 334; *Phillips* v. *Van Shaick*, 37 Iowa, 229; *Wright* v. *Butler*, 6 Wend. 284; 21 Am. Dec. 323; *Wann* v. *McNulty*, 2 Gill, 355; 43 Am. Dec. 58; *Gray* v. *Pingry*, 17 Vt. 419; 44 Am. Dec. 346; *Isaacs* v. *Clarke*, 12 Vt. 692; 36 Am. Dec. 372; *Jackson* v. *Wood*, 3 Wend. 28; *Wood* v. *Jackson*, 8 Wend. 9; 22 Am. Dec. 603; *Lansing* v. *Montgomery*, 2 Johns. 383; *Howard* v. *Mitchell*, 14 Mass. 241; *Towns* v. *Nims*, 5 N. H. 259.[2])

II.   A party claiming under the judgment of an inferior tribunal, or a court of special and limited jurisdiction, must allege and prove all of the facts conferring jurisdiction. (*Stiles* v. *Stewart*, 12 Wend. 473; 27 Am. Dec. 142; *Atkins* v. *Kinnan*, 20 Wend. 241; 32 Am. Dec. 540; *Levy* v. *Shurman*, 6 Ark. 182; 42 Am. Dec. 690; *Dick* v. *Wilson*, 10 Or. 490; *Jolly* v. *Foltz*, 34 Cal. 321; Freem. on Judg. 454; 1 Comp. L. 1122; *Keys* v. *Grannis*, 3 Nev. 548; *Victor M. & M. Co.* v. *Justice's Court*, 18 Nev. 21.)

III.   It was error in the court to admit the judgment in evidence upon the questions of title and agency against the objections of defendant, when no issue was raised concerning title or agency. (*Marshall* v. *The G. F.*, 16 Nev. 156; *Perkins* v. *Sierra Nevada Co.*, 10 Nev. 413; *Frevert* v. *Henry*, 14 Nev. 191; *Bachman* v. *Sepulveda*, 39 Cal. 689; *Le Roy* v. *Rogers*, 30 Cal. 229;[3] *Boggs* v. *Clark*, 37 Cal. 236; *Jackson* v. *Lodge*, 36 Cal. 28; *Fulton* v. *Hanlow*, 20 Cal. 450; *Russell* v. *Place*, 94 U. S. 606; *Smith* v. *Sherwood*, 4 Conn. 276; 10 Am. Dec. 143; *Towns* v. *Nims*, 5 N. H. 259; 20 Am. Dec. 478; *Tams* v. *Lewis*, 42 Pa. St. 402.)

IV.   No estoppel can arise out of a question or point raised and determined only incidentally or collaterally, and for that reason it was error in the court to admit the judgment as an estoppel on these questions. (Big. Est. 163; Freem. on Judg.,

---

1   85 Am. Dec. 157.          2   20 Am. Dec. 578.          3   89 Am. Dec. 88.

sec. 273; *Sherman* v. *Dilley*, 3 Nev. 23; *Fulton* v. *Hanlow*, 20 Cal. 450; *Boggs* v. *Clark*, 37 Cal. 236; *Jackson* v. *Wood*, 3 Wend. 28; *Wood* v. *Jackson*, 8 Wend. 9; 22 Am. Dec. 604; *Lawrence* v. *Hunt*, 10 Wend. 80; 25 Am. Dec. 541; *King* v. *Chase*, 15 N. H. 9; 41 Am. Dec. 682; *Tams* v. *Lewis*, 42 Pa. St. 402.)

Technical estoppels are not favored in law. (*Franklin* v. *Merida*, 35 Cal. 558;[1] *Mitchell* v. *Kintzer*, 5 Pa. St. 216; 47 Am. Dec. 408.)

V.　When title to real estate is raised in a justice's court, the case cannot be tried there, but must be transferred to the district court.　The district court cannot acquire jurisdiction by appeal from a judgment rendered in such a case. (*Paul* v. *Armstrong*, 1 Nev. 82; *Peacock* v. *Leonard*, 8 Nev. 84; *Leonard* v. *Peacock*, 8 Nev. 160; *Harding* v. *Moor*, 9 Nev. 355; *Tull* v. *Anderson*, 15 Nev. 426; *Langford* v. *Montieth*, 102 U. S. 145; *Levy* v. *Shurman*, 6 Ark. 182; 42 Am. Dec. 692; *Derton* v. *Boyd*, 21 Ark. 267; *People* v. *Skinner*, 13 Ill. 287; 54 Am. Dec. 432· *Horan* v. *Wahrenberger*, 9 Tex. 313; 58 Am. Dec. 149.)

VI.　A judgment rendered by a court having no jurisdiction to render it is an absolute nullity, and may be everywhere attacked, collaterally or otherwise.　No estoppel can arise out of such a judgment, and it is entitled to no consideration whatever, neither as a plea or as evidence, nor otherwise. (*Little* v. *Currie*, 5 Nev. 90; Freem. on Judg., secs. 116, 117, 252, 264; *Boggs* v. *Clark*, 37 Cal. 236; *Wixom* v. *Stevens*, 17 Mich. 518;[2] Big. on Est. 20–26; *Elliott* v. *Piersol*, 26 U. S. 340; *Thompson* v. *Tolmie*, 27 U. S. 163; *Voorhees* v. *U. S. Bank*, 35 U. S. 475; *Cooper* v. *Reynolds*, 77 U. S. 316; *Atkins* v. *Kinnan*, 20 Wend. 241; 32 Am. Dec. 534; *Shaffer* v. *Gates*, 2 B. Monroe, 453; *Swiggart* v. *Harber*, 4 Scam. 364; 39 Am. Dec. 422; *Pelton* v. *Platner*, 13 Ohio, 209; 42 Am. Dec. 197; *Smith* v. *Tupper*, 4 Smedes & M. 261; 43 Am. Dec. 483; *Cheatam, Ex parte*, 6 Ark. 531; 44 Am. Dec. 525; *Miller* v. *Brinkerhoff*, 4 Denio, 118; 47 Am. Dec. 243; *Horner* v. *State Bank*, 1 Ind. 130; 48 Am. Dec. 355; *Rodgers* v. *Evans*, 8 Ga. 143; 52 Am. Dec. 392; *Kenney* v. *Greer*, 13 Ill. 432; 54 Am. Dec. 439; *Horan* v. *Wahrenberger*, 9 Tex. 313; 58 Am. Dec. 147; *Fitzhugh* v. *Custer*, 4 Tex. 391; 51 Am. Dec. 729; *McCauley* v. *Hargroves*, 48 Ga. 50; *Pennywit* v. *Foote*, 27 Ohio St. 600.[3])

VII.　It is alleged that U. Smith collected the rents unlawfully and without authority, and that defendant afterwards

---

1　95 Am. Dec. 129.　　　2　97 Am. Dec. 205.　　　3　22 Am. Rep. 340.

ratified the act.   Such an unlawful act cannot be the subject of an agency or of a ratification.   (Sto. on Ag., sec. 11; Whar. on Ag., secs. 25, 249, 319, 334, 615; *State* v. *Matthis*, 1 Hill (S. C.) 25; *Harrison* v. *McHenry*, 9 Ga. 170;[1] *Marsh* v. *Fulton Co.*, 77 U. S. 681; *McCracken* v. *City of San Francisco*, 16 Cal. 593, 624; *Grogan* v. *San Francisco*, 18 Cal. 608; *Zottman* v. *San Francisco*, 20 Cal. 101;[2] *People* v. *Swift*, 31 Cal. 26; *Decuier* v. *Lejeune*, 15 La. Ann. 569; *Moore* v. *Lockett*, 2 Bibb (Ky.) 67;[3] *Phelan* v. *San Francisco*, 6 Cal. 531; Whar. on Ag., sec. 70; Sto. on Ag., sec. 240; *Harrison* v. *McHenry*, 9 Ga. 170;[4] *Newson* v. *Hart*, 14 Mich. 237.)

VIII.   There is no pretense that plaintiff relied upon any act of ratification of defendant, or that by relying upon any such act of ratification she has been in any way prejudiced. (Whar. on Ag., sec. 74; *Doughaday* v. *Crowell*, 3 Stockt. 201.)

Several instances of a special agency, or of employment, do not prove a general agency, but rather disprove it.   (*Angel* v. *The M. & M. R. R. Co.*, 18 Iowa, 555; *Ostrander* v. *Brown*, 15 Johns. 39;[5] Sto. on Ag., sec. 87; Whar. on Ag., secs. 40, 127, 128.)

IX.   A person dealing with an agent must inquire into and look to his authority, and deals with him at his peril. Especially is this true in the case of a special agent.   (*Yellow Jacket Co.* v. *Stevenson*, 5 Nev. 224; Sto. on Ag., sec. 166; Whar. on Ag., secs. 128, 139; *Blum* v. *Robertson*, 24 Cal. 126; *Rossiter* v. *Rossiter*, 8 Wend. 495; 24 Am. Dec. 65; *Martin* v. *U. S.*, 2 T. B. Mon. 89; 15 Am. Dec. 130; *Baring* v. *Pierce*, 5 Watts & Serg. 548; 40 Am. Dec. 537; *Briggs* v. *Large*, 30 Pa. St. 287, 291; *Moore* v. *Lockett*, 2 Bibb (Ky.) 67;[6] *Black* v. *Shreve*, 13 N. J. Eq. 456, 462; *Brown* v. *Johnson*, 12 Smedes & M. 398; 51 Am. Dec. 118; *Goodloe* v. *Godley*, 13 Smedes & M. 233; 51 Am. Dec. 159; *Towle* v. *Leavitt*, 23 N. H. 360; 55 Am. Dec. 204.)

X.   If the estate has suffered by the illegal act of the administratrix in giving a power of attorney, she and her bondsmen are responsible.   But she cannot set up her own illegal act in avoidance of her contract.   For this reason it was error to admit in evidence the judgment roll, and to refuse defendant's instructions. (*Heron* v. *Marshall*, 5 Humph. 443; 42 Am. Dec. 446; *Selma & T. R. R. Co.* v. *Tipton*, 5 Ala. 787; 39 Am. Dec. 357; *Parker* v. *Hall*, 2 Head, 641–5; *Bayles* v. *Elcan*, 1 Cold. 96–9; *Scort* v. *Dunn*, 1 Dev. & Bat. Eq. 425; 30 Am. Dec. 182;

Schouler's Ex. and Adm., secs. 318, 359, 360; *Stronach* v. *Stronach,* 20 Wis. 133; *Coleman* v. *McMurdo,* 5 Rand. (Va.) 51; *Johnson* v. *Lewis,* Rice's Chan. (S. C.) 40; *Miller* v *Davidson,* 3 Gil. 518; 44 Am. Dec. 715.)

XI. The several acts of the parties having been fully executed before this action was brought, even if illegal, null, and void, as alleged by plaintiff, she is bound by them, and cannot maintain this action. (*Denton* v. *English,* 2 Nott & McCord, 581; 10 Am. Dec. 638; *Black* v. *Oliver,* 1 Ala. 449; 35 Am. Dec. 38; *Norris* v. *Norris,* 9 Dana, 317; 35 Am. Dec. 138; *Dixon* v. *Olmstead,* 9 Vt. 310; 31 Am. Dec. 629; *Boyd* v. *Barclay,* 1 Ala. 34; 34 Am. Dec. 765; *Perkins* v. *Savage,* 15 Wend. 412; *Green* v. *Godfrey,* 44 Me. 25; *White* v. *Crew,* 16 Ga. 420; *Walten* v. *Tusten,* 49 Miss. 569; *Planters' Bank* v. *Union Bank,* 16 Wall. 499; *Watson* v. *Bagaley,* 12 Pa. St. 154; 51 Am. Dec. 596.)

XII. Ignorance of the law or bad advice of counsel is no ground for relief against the consequences of her own illegal act and contract. (*Mayor of Baltimore* v. *Lefferman,* 4 Gill, 425; 45 Am. Dec. 145; *Williams* v. *Hodgson,* 2 Harris & Johns. 474; 3 Am. Dec. 563; *Lawrence* v. *Beaubien,* 2 Bailey, 623; 23 Am. Dec. 164; *Platt* v. *Scott,* 6 Blackf. 389; 39 Am. Dec. 436; *Champlin* v. *Layton,* 18 Wend. 407; 31 Am. Dec. 382; *Upton* v. *Tribilcock,* 91 U. S. 50.)

A mistake of law, where the party knows the facts but is ignorant of the consequences, is no ground for relief, and money paid under such mistake cannot be recovered back. (*Mowatt* v. *Wright,* 1 Wend. 355; 19 Am. Dec. 515; *Mayor of Baltimore* v. *Lefferman,* 4 Gill, 425; 45 Am. Dec. 145–8; *Fisher* v. *May,* 2 Bibb, 448; 5 Am. Dec. 626; *Storrs* v. *Barker,* 6 Johns. Ch. 166; 10 Am. Dec. 323; *Good* v. *Herr,* 7 Watts & Serg. 253; 42 Am. Dec. 236; *Upton* v. *Tribilcock.* 91 U. S. 50; *Barlow* v. *U. S.,* 32 U. S. 404; *Elliott* v. *Swartwout,* 35 U. S. 137; *Bank of U. S.* v. *Daniels,* 37 U. S. 33; *Mellish* v. *Robertson,* 25 Vt. 603–8; *Kenyon* v. *Welty,* 20 Cal. 637;[1] *Bize* v. *Dickason,* 1 T. R. 285; *Brisbane* v. *Dacres,* 5 Taunt. 144; *Lowry* v. *Bourdieu,* 2 Doug. 468; *Freeman* v. *Curtis,* 51 Me. 140.[2])

XIII. The assignment of the lease to secure the eight-hundred-dollar note was simply a chattel mortgage to secure a debt. (Jones on Chat. Mort., secs. 1, 280; 2 Bouv. L. 327, " Personal Property.")

Upon the condition of a chattel mortgage being broken, the

---

[1] 81 Am. Dec. 137.　　　　[2] 81 Am. Dec. 564.

law vests the title to the chattel mortgage absolutely in the
mortgagee. Plaintiff could not, therefore, maintain this action.
(Pow. on Mort. 1041; 1 Jones on Chat. Mort., secs. 280, 426,
551, 699, 700, 703; Tho. on Mort. 429, 430, 445; *Bryant* v. *Carson River L. Co.*, 3 Nev. 316;[1] *Dewey* v. *Bowman*, 8 Cal. 151;
*Wright* v. *Ross*, 36 Cal. 414; *In re Haake*, 2 Saw. 240; *Heyland*
v. *Badger*, 35 Cal. 404; *Charter* v. *Stevens*, 3 Denio, 33; 45 Am.
Dec. 447.)

XIV.   A judgment may be impeached collaterally by a
defendant by showing that he was not served with summons,
and did not appear or authorize an attorney to appear for him,
although the record shows these facts affirmatively. (*Ferguson*
v. *Crawford*, 70 N. Y. 253;[2] *Mastin* v. *Gray*, 19 Kan. 458;[3] *People* v. *Dawell*, 25 Mich. 247;[4] *Garrison* v. *McGowan*, 48 Cal. 592;
*Pennywit* v. *Foote*. 27 Ohio St. 600;[5] *Van Fossen* v. *State*, 37 Ohio
St. 317.[6])

*M. C. Tilden* and *W. E. F. Deal*, for Respondent:

I.   The judgment roll was admissible to show by the declaration of Cyrus Smith that U. Smith was his agent; that the
power given by respondent to U. Smith was in fact given to
Cyrus Smith, and the purpose for which it was given.   It was
also admissible, as a muniment of title, to prove that the property belonged to the estate.   (Freem. on Judg., secs. 256, 260;
*McLeod* v. *Lee*, 17 Nev. 113.)

There was no necessity to plead this decree.   The judgment
was conclusive between the parties to this action upon the
question of title.   (*Sherman* v. *Dilley*, 3 Nev. 21; Freem. on
Judg., sec. 284.)

II.   The court which rendered the judgment was a court of
general jurisdiction, and had jurisdiction over the subject-matter
of the action and of the parties, and as long as the judgment
stands it must be respected and enforced.   (Freem. on Judg.,
sec. 116; *State* v. *District Court*, 16 Nev. 372; *Ex parte Winston*,
9 Nev. 75; *Ex parte Twohig*, 13 Nev. 302.)

III.   Whenever the question of fact is proved beyond any
question, it is the duty of the court to take away such question
from the jury. (*Sharon* v. *Minnock*, 6 Nev. 377; *Menzies* v. *Kennedy*, 9 Nev. 152; Hayne on N. T. 331, 342, 344 b; *Watson* v.
*Daman*, 54 Cal. 278; *Oscanyon* v. *Arms Co.*, 103 U. S. 261.)

The documentary testimony introduced by appellant and

| 1 | 93 Am. Dec. 403. | 2 | 26 Am. Rep. 589. | 3 | 27 Am. Rep. 149. |
| 4 | 12 Am. Rep. 260. | 5 | 22 Am. Rep. 340. | 6 | 41 Am. Rep. 507. |

respondent established the fact conclusively that the property belonged to the estate, and that U. Smith was the agent of respondent. (See, on question of ratification, Whar. on Agency, secs. 61, 77, 83, 92; Storey on Agency, secs. 239, 253, 260; *Curry* v. *Hale,* 15 W. Va. 867; 2 Greenl. on Ev., secs. 64, 68.)

IV. The judgment roll was properly admitted in evidence in support of the allegations of the complaint.

It is not necessary for a plaintiff, in stating his cause of action, to allege matters of evidence, however conclusive it may be—even though it amount to an estoppel: *Green* v. *Palmer,* 15 Cal. 411;[1] *Depuy* v. *Williams,* 26 Cal. 313; *Wilson* v. *Cleveland,* 30 Cal. 192; *Miles* v. *McDermott,* 31 Cal. 271; *Racouillat* v. *Rene,* 32 Cal. 450; *Marshall* v. *Shafter,* 32 Cal. 176; *Hostler* v. *Hayes,* 3 Cal. 302.)

When the court decided against defendant as to the right of the forty dollars, the question of the ownership of the property was necessarily settled adversely to him, and is *res judicata.* (Freem. on Judg., secs. 249, 255–8; *Jackson* v. *Lodge,* 36 Cal. 28.)

V. A judgment can never be attacked collaterally for *error.* (Freem. on Judg., sec. 135.) If the mode by which the district court acquired jurisdiction was irregular (and it certainly was nothing more), the defendant had a full and complete remedy in that suit. There is a broad distinction between a case in which a court has *no* jurisdiction and one in which the jurisdiction is defectively obtained. In the former the judgment is *void,* in the latter it is only erroneous and cannot be attacked collaterally. (Freem. on Judg., secs. 126, 135, 249, 258; *State* v. *District Court,* 16 Nev. 371; *Moore* v. *Martin,* 38 Cal. 428.)

VI. Even had the judgment roll been excluded, the verdict must have been the same. Hence there was no injustice done, and the judgment will not be disturbed. (*Persse* v. *Cale,* 1 Cal. 369; *Mills* v. *Barney,* 22 Cal. 240; *Kidd* v. *Teeple,* 22 Cal. 255; *Horwood* v. *Kenfield,* 30 Cal. 393; *Clayton* v. *West,* 2 Cal. 381; *Carpentier* v. *Gardner,* 29 Cal. 160; *Moon* v. *Rollins,* 36 Cal. 333;[2] *Hastings* v. *Jackson,* 46 Cal. 234; *Robinson* v. *Imperial M. Co.,* 5 Nev. 44; *Todman* v. *Purdy,* 5 Nev. 238; *Cahill* v. *Hirschman,* 6 Nev. 57.)

VII. The agency established by the proofs was in no sense

---

[1] 76 Am. Dec. 492.　　　　　　[2] 95 Am. Dec. 181.

an agency to do an unlawful or illegal act. (Story on Ag., sec. 445; Whart. on Ag., sec. 478.)

VIII. Administrators of estates of deceased persons are merely the creatures of the statute. Their powers are fixed by law. (*Royce* v. *Hampton*, 16 Nev. 34.) Appellant was bound to know that he had no right to receive money from respondent without having proved his claim against the estate, and without having it allowed by both the administratrix and the court. (1 Comp. L. 612 et seq.; *Washburn* v. *Hale*, 10 Pick. 429; *Ripley* v. *Sampson*, 10 Pick. 371; *Corbett* v. *Rice*, 2 Nev. 334; *Willis* v. *Farley*, 24 Cal. 490; *Ellis* v. *Polhemus*, 27 Cal. 355; *Reitzell* v. *Miller*, 25 Ill. 67; *Ritte* v. *Shipley*, 46 Cal. 161; *Hooe* v. *Lockwood*, 3 Chand. (Wis.) 41; *U. S.* v. *Eggleston*, 4 Saw. 203; *Zachary* v. *Chambers*, 1 Or. 321.) And even if he had presented his claim, and it had been properly allowed, he would have to account to the administratrix for the amount received by him, so as to ascertain whether he had received more than his share of the estate, the estate being insolvent and there being other creditors. (Redfield on Wills, 251, 264; *Richards* v. *Nightingale*, 9 Allen, 149.)

By the Court, LEONARD, J.:

Charles P. Adams, in his lifetime, became the lessee of a certain town lot in Virginia City, and the owner of a wooden building thereon, described in the complaint herein. Before the lease expired, March 12, 1878, Adams borrowed of defendant eight hundred dollars, through U. Smith, defendant's brother, and to secure the payment of the same assigned said lease to defendant. The lease expired December 1, 1881, and the note given by Adams for the money loaned by defendant was due, one half September 12, 1878, and the balance March 12, 1879. By the terms of the lease Adams had the right to remove the wooden building above mentioned at the end of the term, but not before. After the maturity of the note, November 19, 1879, when the principal was still unpaid, Adams died intestate, and plaintiff was appointed administratrix of his estate, January 10, 1880. Defendant never presented any claim to plaintiff or the district judge for allowance. Other claims were regularly presented and allowed, which were unpaid, and the estate is insolvent. January 15, 1880, plaintiff as adminis-

tratrix authorized U. Smith, in writing, to collect all the rents coming from the building on the leased premises, and apply the same to the satisfaction of the eight-hundred-dollar note, less one hundred dollars per month ground-rent, and other necessary expenditures for repairs, etc. The power of attorney just mentioned was not authorized or approved by the court. On December 1, 1881, plaintiff revoked the authority previously given to U. Smith, and notified the tenants to pay no more rents to him. This action was brought to recover from defendant the rents collected by U. Smith, upon the theory that the latter was the agent of the former in all that he did under said power of attorney; that the rents belonged to the estate; and that plaintiff had no authority to execute said power of attorney, or to pay or authorize the payment of said claim, or any part thereof, without its presentation and allowance in the manner prescribed by law. Plaintiff recovered judgment for two thousand four hundred dollars, and this appeal is from the judgment and an order overruling defendant's motion for a new trial.

Before plaintiff could recover any part of the sum sued for, it was absolutely necessary for her to prove that the rents collected by U. Smith belonged to the estate, and that U. Smith was, by previous appointment, the agent of defendant, or that his acts in relation to the rents had been ratified by defendant. But there was nothing to hinder U. Smith from acting as the agent of both plaintiff and defendant,—as plaintiff's in collecting the rents, and defendant's in collecting and receiving them in payment of the note,—since in so acting the agent's duties would have been consistent with the interests of both parties, according to their contract, the common object having been to pay the note from the rents. (Bish. Cont., sec. 333; *Insurance Co.* v. *Buffum*, 115 Mass. 345.)

At the trial, the judgment roll, in a case entitled like the one under consideration, from the first judicial district court, marked "Exhibit E," was admitted in evidence on behalf of plaintiff, for the purpose of estopping defendant from asserting any title to the premises from which the rents in question were derived, and from attempting to prove that, in all that U. Smith did, as alleged in amended complaint, in collecting rents, defendant was not the principal, and U. Smith his agent. Defendant objected to the admission of the roll on many

grounds, but it was admitted, " to go to the jury for what it was worth." After plaintiff rested, defendant offered himself as a witness. He was asked nineteen questions, all of which were objected to, because "they tended to contradict the record, Exhibit E, admitted in evidence, by which, in law, defendant was conclusively bound as to the agency of U. Smith, and as to the title to the premises described in plaintiff's complaint." The objection was sustained. To the same effect the court instructed the jury; and counsel for respondent in this court endeavor to maintain the correctness of the rulings of the court below upon these points.

It is urged by counsel for appellant that, for many reasons stated, said judgment-roll, and the papers connected therewith, were not admissible to prove an estoppel, and that they were not conclusive upon the question of title or agency. Our conclusions are such that it will not be necessary to examine many of the objections urged. To the extent of the eight-hundred-dollar claim, we are satisfied plaintiff cannot recover. The record shows that she acted according to the advice of her counsel in executing the power of attorney to U. Smith, whom she undoubtedly regarded as the agent of defendant. There is nothing to show that U. Smith or defendant took any advantage of her, or that she was deceived or mistaken as to any material fact, and she must be presumed to have known the law. We must presume that she was cognizant of the fact that she was not obliged to pay defendant's claim, although it was secured by mortgage (*Harp* v. *Calahan*, 46 Cal. 222; *Pitte* v. *Shipley*, Id. 154; *Clark* v. *Davis*, 32 Mich. 155), if it was not presented for allowance as provided by statute. It is not shown, even, that when she caused the claim to be paid she supposed the estate was solvent. In other words, it appears that when this action was brought, the contract between plaintiff and defendant had been fully executed, that plaintiff paid the claim voluntarily, and in her own wrong.

This is not a case of payment of a claim that was not legally exigible. It was due from the Adams estate to defendant, although no action could have been maintained thereon without due presentment to the administratrix and the judge; and the payment made, albeit in an irregular manner, released the estate from a legal charge. It is not a case of money paid by mistake of fact, or by reason of fraud.

*Herron* v. *Marshall*, 5 Humph. 443,[1] was an action to recover a negro slave sold by the administrator of the estate of Robert Parrish to one Doyle, without authority of court, when the statute declared that the sale of a slave so made should be void. Doyle kept the slave until his death. The plaintiffs were devisees under the will of Robert Parrish, and the defendants were executor and executrix of the last will and testament of Doyle. After reciting the provisions of the statute, the court said: " Consequently, the sale of the negro in controversy from Matthew F. Parrish, administrator of Robert Parrish,  *  *  *  conveyed no title to Michael Doyle, the testator of the defendants; and the complainants are entitled to the relief sought, unless their claim be barred by the statute of limitations. It is not argued that the devisees, under the will of Robert Parrish, are barred by reason of a neglect on their part to assert their rights within the proper time; for some of them were under age at the time the bill was filed. But it is contended that, inasmuch as the sale is declared by the statute to be void, no right whatever passed thereby to the vendee, Doyle; and that the administrator of Robert Parrish might have commenced suit, notwithstanding the sale, against Doyle, immediately, to regain the possession of the negro; that therefore the statute of limitations commenced running in favor of Doyle the moment he took possession of the negro, and no suit having been brought within three years thereafter, he is protected by the statute of limitations. To this reasoning we cannot assent. The statute was passed for the protection of legatees and distributees, and to hold that an executor or administrator might, in violation of the provisions of the statute, sell negroes of the estate, and make that sale good and valid by a neglect to sue for their recovery, within three years thereafter, would be utterly destructive of the statute, and render it inoperative and unavailable. But, furthermore, we do not think that the administrator or executor could, in such case, set aside his own sale, and sue to recover the possession of the negro; and this upon the well-settled principle that a man shall not be permitted to set up his own illegal acts to vitiate his own contracts. In other words, we think that the executor or administrator would, in a suit against their vendee, be estopped from saying that they had violated the statute in selling the negro. The consequence is, that the legatees or

---

[1]  42 Am. Dec. 444.

distributees may sue, and, if they do so within time, will be permitted to recover."

*Sloan* v. *Stevenson,* 24 La. Ann. 278, was an action by administrators and heirs to recover the price of cotton sold by the former, on the ground, among others, that the contract was null because it was a private sale of succession property. Said the court: " The contract being executed, the administrators will not be listened to, in a court of justice, when alleging their own turpitude and dereliction of duty."

In *Egbert* v. *Rush,* 7 Ind. 707, the administrator of an estate, without any order of court, voluntarily paid a part of the assets to the widow and heirs before the settlement of the estate. Sufficient means not having been left to pay the debts and compensate the administrators for their services, they brought their action against the widow and heirs to recover a sufficient sum out of the amount advanced to them to discharge the unpaid residue of the debts and compensate the administrators.   The court held that the suit would not lie, and said: " So far as the basis of the decree before us is disclosed, it may be resolved into two elements: (1) Money actually advanced to the widow and heirs of the intestate: (2) Money due to the administrators for services as such. The first was paid over to the widow and heirs without any order of court to that effect.   It does not appear that any order for distribution was ever made.   The payment was the act of the administrators without any legal authority.   It must be taken as made, too, with a full knowledge of all the facts.   As administrators they must have known the situation of the estate.   At least, they had the means of knowing, and must be presumed to know how it stood.   Their own reports show the debts and liabilities.   It is not pretended that this money was ever advanced by them to save the sacrifice of any property of the estate.   It was a voluntary payment of money, without any authority, or any plausible pretext of ignorance as to the facts.   It was clearly waste.   We know of no principle of law, and, certainly, no consideration of public policy, that can be invoked in aid of the administrators.   Even as against adults the law would raise no *assumpsit* in their favor.   Much less in this case against infants."   (And see *Walker* v. *Hill,* 17 Mass. 383; *Pistole* v. *Street,* 5 Port. (Ala.) 64; *Parker* v. *Hall,* 2 Head, 645; *Stronach* v. *Stronach,* 20 Wis. 129; *Succession of Marr,* 23 La. Ann. 718; *Miller* v. *Harrison*

34 N. J. Eq. 374; *Haile* v. *McGhee*, 29 La. Ann. 350; *Succession of Margaret McAuley*, 29 La. Ann. 38; *Cook* v. *City of Boston*, 9 Allen, 393; *Benson* v. *Monroe*, 7 Cush. 125;[1] *Patterson* v. *Cox*, 25 Ind. 261; *Williams* v. *Colby*, 44 Vt. 41; *Awalt* v. *Eutaw B. Ass'n.*, 34 Md. 435.)

We shall now consider whether or not any valid objections exist against plaintiff's recovery of the balance collected, after satisfaction of the eight-hundred-dollar note. Should we agree with counsel for defendant that the court erred in ruling that by the judgment roll, Exhibit E, he was estopped to deny that the title to the leased property was in the estate of Adams, or that U. Smith was the agent of defendant under the power of attorney, it would still be true that the roll was admissible and competent to go before the court and jury for what it was worth, to establish, or as tending to-establish, the two facts claimed by plaintiff in relation to title and agency.

The constitution provides that "judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law." In cases tried by juries, courts cannot take from them material disputed questions of fact. But when facts are admitted by the pleadings, or proven by one party, and not controverted by the other, it is not error for the court to take them from the consideration of the jury. (*Sharon* v. *Minnock*, 6 Nev. 377; *U. S.* v. *Tillotson*, 12 Wheat. 181.) In either case there are no disputed questions of fact. "When facts are undisputed, the question whether an agent has the requisite authority to bind his principal is a question of law for the court, whether such authority is sought to be sustained by a previous authorization or by subsequent ratification." (*Gulick* v. *Grover*, 33 N. J. Law, 473.[2]) Upon an undisputed state of facts, whether such facts operate as a ratification is a question of law. (*Bank of Orleans* v. *Fassett*, 42 Vt. 439; and see *Bigelow* v. *Denison*, 23 Vt. 564; *Commercial Bank* v. *Jones*, 18 Tex. 828; *Fay* v. *Richmond*, 43 Vt. 28; *Copeland* v. *Copeland*, 28 Me. 543; *Bradley* v. *Lee*, 38 Cal. 366; *Terry* v. *Sickles*, 13 Cal. 429; *Caulfield* v. *Sanders*, 17 Cal. 573; *Tompkins* v. *Mahoney*, 32 Cal. 235; *Rumsey* v. *Schmitz*, 14 Kan. 546; *Durham* v. *Carbon C. & M. Co.*, 22 Kan. 243.)

Although defendant in his answer denied that the title to the premises from which the rents were derived was in the estate, or that U. Smith was his agent, or that he ever ratified his

1 54 Am. Dec. 716.        5 87 Am. Dec. 728.

brother's acts, our opinion is that, upon the uncontested facts disclosed at the trial, it is true in law that the title was in the estate during the period of collection by U. Smith, and that U. Smith was defendant's agent under the power of attorney executed by plaintiff.

And, *first*, upon the question of title, and consequently of plaintiff's right to receive the rents. The estate's title and interest were a leasehold estate in the land, and the absolute ownership of the building thereon, with the right to remove the latter at the end of the term, but not before. Defendant's title, until December 1, 1881 (and during that time nearly, if not quite, all the rents were collected), was an assignment of the Adams lease as a mortgage to secure payment of the eight-hundred-dollar note. On December 1, 1881, the owners of the lot on which the rented building stood leased the ground to defendant, through U. Smith, upon his representation that he had bought the building, the lease to continue as long as defendant should pay sixty dollars rent monthly. But plaintiff kept possession of the property until about September 11, 1882, when she threatened to remove the building, and a compromise was made between her and the lessors. By order of the court she conveyed the building to the lessors, and received three hundred dollars, besides the bank rents, and an acquittance of all ground-rent. The assignment by Adams to defendant did not provide for payment of any rent to the latter; but it was agreed therein that, in case of default in payment of the note when due, the title of Adams in said lease, and his interest in and to the land described therein, should vest absolutely in defendant. The note was not paid at maturity. The assignment to defendant as a mortgage did not entitle him to receive the rents. (*Polhemus* v. *Trainer*, 30 Cal. 687; 1 Jones, Mortg., sec. 670.)

It is claimed by defendant's counsel that the assignment of the lease to defendant was simply a chattel mortgage; that, upon condition broken, the law vested the title to the lease, and the interest of Adams therein, in defendant, prior to the death of Adams; and that neither the lease, nor the right to collect rents, ever became a part of the Adams estate. But the answer to this claim is, that the leasehold interest assigned to defendant is an interest in lands. (Comp. L. 283, 302, 1292; *Trustees* v. *Dunn*, 22 Barb. 402; Tay. Land. & Ten., sec. 14,

note 2; Id., sec. 455; 1 Wash. Real Prop. 436.)    Defendant's
only remedy was by foreclosure and sale.    (Comp. L. 1309;
*Polhemus* v. *Trainer, supra.*)

We now come to the question of agency.    Although there
was much evidence sustaining the court's conclusion upon this
subject, and little, if any, against it, still, as our opinion rests
upon the fact of ratification by defendant, we shall only
review the evidence which, directly or indirectly, bears upon
that question.

The judgment roll, Exhibit E, admitted in evidence, shows,
and the facts are undisputed, that on January 5, 1882, plaintiff,
as administratrix of the estate of Charles P. Adams, commenced
an action in justice's court, Storey County, against Marshall
Hutchinson, a tenant of the building before mentioned, to
recover forty dollars rent for the months of December, 1881,
and January, 1882.    The rent having been claimed by both
plaintiff and defendant, Hutchinson deposited in court the
amount due, and asked the court to substitute defendant herein
as defendant in that case.    Defendant also, by his attorney,
petitioned the court to the same effect.    On the tenth and six-
teenth of January, 1882, the attorney for plaintiff in the jus-
tice's court wrote defendant, and informed him fully of the
acts of U. Smith and plaintiff in the matter of rents, and
especially that, during the whole time, U. Smith, acting as his
agent, had collected four thousand dollars or more of rents
belonging to the Adams estate, and had paid no part of it to
plaintiff.    He was informed of the suit against Hutchinson,
and what it was for; that U. Smith, with an attorney, had
petitioned the court to substitute Cyrus Smith's name as defend-
ant, claiming that the rents belonged to him.    Defendant
received those letters January 24, 1882, together with a letter
from his attorney in that case.    Defendant, upon receipt of
the letters, went immediately to Virginia City, riding all night,
consulted with his attorney about the case, authorized U.
Smith in writing to attend to his interests in the suit then
pending, and authorized and requested that his name be sub-
stituted in place of Hutchinson as defendant therein.    That
was January 25, and the case was tried January 31.    His
power of attorney to U. Smith was filed January 25.    The
order of substitution was then made, and at the same time

defendant, by his attorney, filed his answer, in which, among other things, he alleged that "plaintiff, Ellen Adams, administratrix of the estate of Charles Adams, deceased, for a valuable consideration, executed to him, defendant, through his attorney in fact, U. Smith, a power of attorney, dated January 15, 1880, authorizing him to collect the rents coming from and payable on the building set forth in said complaint, and that the sums so collected should be applied by defendant to the payment of an indebtedness of eight hundred dollars, due from the estate of Charles Adams, deceased, and from plaintiff herein to defendant herein; that the said indebtedness is now due and owing to said defendant; and that the said power of attorney from plaintiff to defendant was given to enable defendant to pay himself said indebtedness from the rents to be collected as aforesaid."

Although on December 1, 1881, plaintiff notified U. Smith that his power of attorney to collect rents was revoked, it is quite evident that the one ground of defendant's claim of right to receive the forty dollars rent was, that the power of attorney to U. Smith was irrevocable, because coupled with an interest, until the eight-hundred-dollar note was paid. So his attorney advised him in his letter of January 22, 1882, before the trial; and U. Smith testified in this case that he "refused to recognize such revocation" for the same reason. So it appears that defendant endeavored to recover the forty dollars rent in question in that case in part upon the ground that he was entitled to receive it by reason of the power of attorney given by plaintiff to him through his attorney in fact, U. Smith. Although the power of attorney was upon its face to U. Smith, it was competent for Cyrus Smith, in that case, as it was for plaintiff in this, to show that U. Smith was, in fact, the agent of Cyrus Smith in taking it, and in acting under it, so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principal. (Story on Ag., sec. 161, note.)

That defendant's answer in that case, under all the circumstances, was and is a complete ratification of the contract entered into between plaintiff and U. Smith by the power of attorney, and of the acts of the latter thereunder, admits of no doubt; and it follows that defendant is responsible in this action to the same extent that he would have been if the power of

attorney from plaintiff had been given to him, and he had acted under it as did his brother. (Story, Ag., secs. 239, 242, 244; *Summers* v. *Foote*, 28 Miss. 671; *Walker* v. *Mobile & O. R. Co.*, 34 Miss. 255; *Memphis & C. R. Co.* v. *Scruggs*, 50 Miss. 297; *Meyer* v. *Morgan*, 51 Miss. 24;[1] *Hoyt* v. *Thompson*, 19 N. Y. 207; *Dove* v. *Martin*, 23 Miss. 589; *Gibson* v. *Norway Sav. Bank*, 69 Me. 582; *Greenfield Bank* v. *Crafts*, 4 Allen, 453; *Wellington* v. *Jackson*, 121 Mass. 159; *Forsyth* v. *Day*, 46 Me. 177; *Knight* v. *Nelson*, 117 Mass. 458; *Garrett* v. *Gonter*, 42 Pa. St. 144.)

Indeed, if the agency and acts of U. Smith could have been ratified, it is not denied that there was a complete ratification, or that it was made with full knowledge of all material facts. But it is said that the acts of U. Smith, in receiving the power of attorney from plaintiff, and collecting the rents thereunder, for the purpose of satisfying defendant's note, were unlawful, because the claim had not been allowed as the statute requires, and it was unlawful to pay the same without an allowance; that the agency in question was for the purpose of misappropriating the funds of the estate; and that neither such agency, nor the acts of U. Smith thereunder, could be ratified by defendant. We deem this objection frivolous. It was undoubtedly lawful on the part of defendant to receive payment of his note, either before or after allowance, if plaintiff was willing to pay him. The statute does not directly or indirectly prohibit him from doing so. On his part, the only penalty attached to a failure to present his claim is to deprive him of the right to maintain an action thereon. If plaintiff had offered voluntarily to pay him in money, he would have had a right to receive it. If that would have been lawful, he could have collected rents, and paid himself therefrom. With equal reason might it be argued that an ordinary creditor of an estate must see that all preferred claims are paid before he can lawfully receive voluntary payment of his own, or that the administrator pays him only his *pro rata* share, if the estate is unable to pay in full. The statute in relation to the payment of claims is for the guidance of administrators and the protection of creditors, legatees, and distributees. Plaintiff need not have paid the note, except according to the statute, and ought not to have done so. But the wrong was her own, not defendant's. As between him and her, the payment was lawful on his part. Whether, as to creditors, the arrangement was voidable, we need not stop to inquire.

[1] 24 Am. Rep. 617.

Undoubtedly defendant might have claimed and shown, if such was the fact, that when he ratified the acts of his brother in receiving the power of attorney, and making collections under it, he misapprehended the material facts; but such was not his defense, and in no other way could he have escaped the legal effect of ratification. Admitting that the court refused to allow defendant to answer the nineteen questions asked him, for a wrong reason, yet if his answers must have been immaterial, no injury was done. None of the answers could have shown, nor were they intended to show, that defendant was deceived, or that he misapprehended the facts when he filed his answer in the justice's court, and any other evidence was immaterial. (Story, Ag., sec. 239, note; Id., sec. 242.) "A ratification supposes knowledge of the thing ratified; and in case of a contract, the inference from the ratification is that its provisions were known. When the ratification is proved, this inference necessarily follows; and if there was any mistake or misapprehension, the fact must be shown." (*Blen* v. *Bear River & A. W. & M. Co.*, 20 Cal. 613.[1])

If he had testified that he did not, in person, sign the appeal bond, it would still have been true that he authorized his brother to attend to his interests in the suit, and requested his name to be substituted in the place of Hutchinson, as defendant; that he appeared by attorney in justice's and district courts, as well as by his brother, whom he authorized to attend to his interests; and that he paid his attorney for both trials. Had defendant testified that he never authorized his attorney, Mr. Whitcher, to appear for him, or to make and file his answer in the justice's court, it would still have been undisputed that his brother had power to do so, and that he never objected to what was done. He did not propose to testify that he was in fact ignorant of the contents of his answer in the justice's and district courts, or that it was untrue. Whether he ever ratified the acts of his brother, done under the power of attorney from plaintiff, was a question of law for the court to decide upon the admitted facts, or for the jury, if the facts were controverted. The other questions are so plainly immaterial we shall not consider them.

It was claimed by counsel for defendant in the court below that if U. Smith was agent for defendant for the purpose of receiving payment of the note, his agency ceased when he

1   81 Am. Dec. 132.

had received sufficient money to satisfy the same, and that defendant was not bound for anything he did in excess of receiving payment of the note. Under the agreement between plaintiff and U. Smith, the latter undertook to collect the rents, and out of them pay ground-rent, make repairs, etc., and the balance, whatever it might be, to apply upon the note. Neither party knew what the expenses would be, or the length of time that would be required to satisfy the note. It was a part of U. Smith's duty to keep a correct account, and cease collection when payment was made. Defendant recognized this when in his answer he said, in substance: "The power of attorney was given to me through my attorney in fact, U. Smith. Through him I have collected the rents; but I have paid it all out, and the note is still unpaid." He put himself in the place of his brother, and expressly ratified all he had done.

The result of the foregoing is that plaintiff is entitled to recover the amount of rents collected, less the sum due on the eight-hundred-dollar note, and such disbursements as were made for ground-rent, repairs, etc. This much was collected without authority, and is retained without right. From the amount collected the court authorized the jury to deduct all the above items of expenditure, but not the amount due on the note. We see no occasion, however, for a new trial. The testimony shows that two thousand five hundred and fifty dollars were paid by defendant for ground-rent and repairs before the power of attorney was revoked by plaintiff. U. Smith, defendant's witness, testified that he collected more than five thousand dollars. Plaintiff testified that U. Smith told her the total receipts were five thousand two hundred and forty dollars. The jury found a verdict for two thousand four hundred dollars. This sum, less the amount due on the note, was justified by the evidence. The entire evidence shows that after the death of Adams the receipts for rents gradually became less. Defendant must have received more in the first part of the agency than the last. For defendant, then, it is safe to take the monthly average of the amount found by the jury to have been received above the sums paid out (about one hundred dollars), as the sum paid each month on the note. The interest was paid by Adams until November 12, 1879, — a few days before his death. Proceeding upon the basis above stated, and including interest at two per cent per month until January 10, 1880, when letters

of administration were issued to plaintiff, and interest there-
after at ten per cent per annum (Comp. L. 612), the amount
of principal and interest before payment could not have
exceeded eight hundred and seventy-five dollars. This sum
should be deducted from the amount of the judgment.

It is therefore ordered that the cause be remanded to the
court below, with instructions to modify the same by striking
therefrom the words and figures, " twenty-four hundred dol-
lars ($2,400)," and inserting in lieu thereof the words and
figures, " fifteen hundred and twenty-five dollars ($1,525)," if,
within ten days after the *remittitur* is filed in the court below,
plaintiff files her written consent thereto; and the judgment so
modified is affirmed. If such consent be not filed as herein
stated, the order and judgment appealed from are reversed,
and the cause remanded for a new trial, plaintiff to pay costs of
appeal in either event.


By the Court, LEONARD, J., on rehearing:

Although admitting that it is in the power of this court to
modify a judgment upon grounds not taken by counsel, and
that it is its duty to decide cases according to law, " no matter
what may be the argument of counsel," it is asserted in the
petition for a rehearing that " appellant did not advance or
maintain the proposition in this court that he had the right
to receive payment of the eight-hundred-dollar note without
proving his claim against the estate as required by law."
Although what we said upon this point was stated in an answer
to appellant's claim that the acts of U. Smith could not be rati-
fied because they were unlawful, still counsel is mistaken.
(See appellant's brief, page 36, and his brief in reply, page 2;
respondent's brief, pages 28, 33, 34.)

It is also claimed that this question was not considered or
discussed in the court below. The arguments of counsel are
not before us, but the instructions given and refused are. By
respondent's instructions the jury were told that appellant was
never a creditor of said estate, and that they had no right to
make any deduction from the amount of rents collected by U.
Smith for or on account of any debt which Adams owed ap-
pellant; that if they found for plaintiff they must leave entirely
out of consideration any debt due from Adams to appellant,

as the plaintiff herself had no right to pay such debt; that they were only to determine, *first*, what sum, if any, U. Smith collected; *second*, what sum U. Smith paid for ground-rents or other matters which respondent had the right to pay; and, *third*, if they found that U. Smith collected anything above such payments, it was their duty to find a verdict for respondent for such sums. Those instructions involved appellant's right to receive as well as respondent's right to pay. Besides, the court refused to instruct the jury that appellant was entitled to retain the amount of the eight-hundred-dollar note. It is true that appellant did not, so far as the record shows, except to the court's refusal to give his instructions, but the instruction just referred to shows appellant's theory in relation to respondent's right to recover the amount of the note.

The conclusion arrived at, that respondent could not recover the amount of the eight-hundred-dollar note, is attacked as unsound, because, *first*, it is inconsistent with the pleadings; *second*, because there was no proof that the note had not been paid, and the burden was upon appellant to show that fact; *third*, because the record does not show that respondent paid the note voluntarily, but that, on the contrary, it shows the power of attorney to collect rents, and apply them to such payment, was fraudulently obtained; that the statement on motion for a new trial does not specify that the verdict is not sustained by the evidence, for the reason that the amount due appellant should have been deducted from the rents collected; and that the result is the same as though no statement had been filed. Before respondent could recover the amount of rents collected and paid in satisfaction of the eight-hundred-dollar note, she was obliged to plead and prove facts entitling her to receive it back. The power of attorney, and the collection of rents thereunder to the extent of the indebtedness, amounted to payment of the note. The result was precisely the same as though she had taken the amount claimed from moneys belonging to the estate, and paid it to U. Smith in satisfaction of appellant's demand. The amended complaint, then, shows that she paid the claim. If, in a legal sense, the payment was voluntary, and especially if she did not act under a misapprehension of facts, and was not deceived by representations of U. Smith which were untrue, and which he had no right to make, and if the note was unpaid, then she could not recover to the

extent of the sum due thereon. If a man pays money in satisfaction of a claim, in order to recover it back, he must allege facts justifying such recovery, and if the facts are denied, he must prove them. If he relies upon deception and fraud, he must allege them. If he relies upon prior payment, he must allege that. If he alleges simply that he paid a sum of money, and asks that he may recover it back, without showing any good reason in law why it should be returned to him, he states no cause of action.

Let us test the complaint in this case by these principles. It is alleged that respondent was induced to give the power of attorney by reason of appellant's pretension that he owned and held a note and mortgage of eight hundred dollars against the estate. Appellant had the right to make the pretension stated if it was true. But it is also alleged that "said pretended claim and demand was and is utterly false and fraudulent, but plaintiff, at the time she executed said instrument, in consequence of the representations of defendant, believed said claim and demand to be just and true." The allegation that "said claim and demand was utterly false and fraudulent" was only a conclusion of law arising from the fact of prior payment, if it had been made. If prior payment and ignorance of the fact had been alleged, a failure to deny would have been an admission entitling respondent to recover. But appellant was not required to deny the legal conclusion arising from facts not stated, and failure to deny was not an admission that his claim was false or fraudulent; that is to say, that it had been paid.

Much is said in the petition for rehearing about appellant's denial in his answer "that he ever pretended to own or hold any claim whatever against Adams or his estate at the time of his death, or at any other time." That denial was inserted upon the theory that U. Smith was not his agent in the premises, and that he was not responsible for anything done by U. Smith. It was not, nor was it intended to be, an admission that the eight-hundred-dollar note had been paid prior to the giving of the power of attorney. But in an amendment to his answer appellant alleges that, at the date of the note, his brother, U. Smith, had in his possession the sum of eight hundred dollars of appellant's money, which U. Smith loaned to Adams for and on behalf of, and as the money and property of appellant, and took therefor a promissory note, and as a

chattel mortgage to secure the same, received an absolute assignment of a leasehold interest in the property described; that no part of said eight hundred dollars, or the interest thereon, had ever been paid as provided in said promissory note and assignment; that on March 12, 1879, all the conditions, covenants, and agreements contained in said promissory note and assignment were broken, and said assignment became absolute, and the title to said leasehold interest vested absolutely in appellant. It is said that appellant's allegation touching the non-payment of the note was inserted for the purpose of asserting title in himself. That was probably his primary object, though it may not have been the only one. But whatever the truth may be as to his reasons for alleging non-payment, the fact remains that he did allege it, and it shows, at least, that he did not intend to admit that the note had been paid, and consequently that the claim was false and fraudulent.

Appellant denied that any claim which he ever pretended to own or hold against Adams, or his estate, or respondent, or any claim or equity pretended by any one else to be held or owned by appellant against Adams or his estate, was in any manner false or fraudulent. If we admit that the criticisms of counsel for respondent concerning these denials are just, still the answer is, that any denial was entirely gratuitous. None was required, for the reasons before stated, and the burden was still upon respondent to show herself entitled to recover the eight hundred dollars paid. It was not claimed that appellant's demand was false or fraudulent, unless the note had been paid prior to the death of Adams. Respondent admitted that Adams received the eight hundred dollars, and gave his note and mortgage. It was not claimed that anything had been paid since the death of Adams. There was not the slightest evidence tending to show payment, except from rents collected under the power of attorney. The only evidence intended to prove payment otherwise was this, in respondent's testimony: "When I gave Smith the power of attorney, I supposed that the eight-hundred-dollar note was still unpaid, but I have since thought, and now believe, that the whole, or nearly the whole, of it was paid before my husband died." But not one fact did she state justifying her belief. On the contrary, it was in evidence that the note and mortgage were in the hands of U.

Smith at the date of the power of attorney, subsequent to the death of Adams. They were in the same hands as late as March, 1882, at the time of the trial on appeal in the first district court. The note and mortgage were presented in court at that time, and there is no proof that any payment had been indorsed thereon. If payments appeared, the fact could have been shown. In an action upon a promissory note, failure to pay must be alleged; but so far as proof is concerned, possession of the note is sufficient, *prima facie*, to sustain the allegation. (*Frish* v. *Caler*, 21 Cal. 74.) And although it was upon respondent to prove payment, yet the facts above stated showed *prima facie* that payment was not made prior to the death of Adams. And were we wrong in saying that, in a legal sense, respondent paid the note voluntarily? In the first place, the idea that the payment was not voluntary finds no support in the complaint. Of course ignorance of the law on the part of respondent is no excuse, and the only thing charged against appellant is, that respondent was induced to give the power of attorney, or pay the note, by the pretense that it had not been paid. Then, certainly, until she alleges that it was paid otherwise than from the rents, there is no allegation of a false inducement. The principal evidence upon this point was given by respondent herself. She said: "I am acquainted with Dr. U. Smith. After my husband died, U. Smith came to my house every day, and wanted me to be appointed administratrix of my husband's estate. He told me that my husband was indebted to his brother, Cyrus Smith, in the sum of eight hundred dollars, and that Cyrus Smith had a mortgage on the B Street house for that amount. After I was appointed administratrix, he urged me to give him a power of attorney to collect the rents from the B Street house until he got money enough out of it to pay off his brother's claim, and then he said he would return it back to me, and I did give him the power of attorney to collect the rents."

He had a perfect right to do all that, and say what he did, if the note was unpaid. He did not have the right to retain the power of attorney and collect rents after the note had been satisfied; hence the judgment against appellant.

Respondent was then shown the power of attorney, and asked by her counsel: "What representation, if any, did U. Smith make to you to get the power of attorney? What did he

say?" Appellant's objections to this question were overruled, and witness answered: " He told me that he was a good man; that he was a smart business man; and understood the law, and that he could not collect the rents very well from the tenants; that he had no interest in the business except to collect the money for his brother Cyrus, and that his brother was a wealthy man, and that when he got money enough out of the estate to pay off his brother's claim he would give it back to me. I believed what U. Smith told me. I had confidence in him, and as I had my little children to take care of,—the youngest then was only about four months old,—I was glad to have him attend to the business. Mr. Tuska was my lawyer when I was appointed administratrix, and attended to that business for me; and Dr. U. Smith went to Mr. Tuska and got him to write that power of attorney, and U. Smith sent it down to my house to me by my brother, with word that Mr. Tuska had drawn it, and that it was all right, and for me to sign it, and I did so. I signed it without reading it, because I supposed it was all right, and my brother took it back and gave it to Dr. U. Smith."

The power of attorney, given January 15, 1880, remained unrevoked until December 1, 1881, and in the revocation respondent stated that she annulled and made void the power of attorney made by her in writing, and bearing date the fifteenth day of January, 1880, wherein she "did make, constitute, and appoint U. Smith her true and lawful attorney for the purpose and with the power therein set forth." Aside from the presumption that respondent knew the law, that is to say, that she had no right to pay the note except as provided by the statute, she did not state that she was in fact ignorant of the statutory provisions, or that U. Smith deceived her in this regard, but on the contrary, she was " glad to have him attend to the business."

In our opinion we stated in this connection that " she acted according to the advice of her counsel in executing the power of attorney." We had reason to suppose that this fact was conceded. It certainly was important. Counsel for appellant stated it in his brief, in this language: " Plaintiff, in her complaint, seeks to excuse her own illegal act and contract, and to justify the bringing and maintenance of this action by pleading her ignorance of the law, and want of legal advice. The proofs show that plaintiff acted advisedly, upon the advice of counsel, and

with full knowledge of all the facts.    No new fact has come to her knowledge since the execution of the power of attorney. But ignorance of the law, or bad advice of counsel, is no ground for relief against the consequences of her own illegal act and contract."

This statement, that respondent acted advised, upon the advice of counsel, is in no manner attempted to be denied by counsel for respondent in their lengthy and able brief, although their attention was called to the pages of the transcript sustaining it.    But the evidence does show the fact to be as stated. Respondent testified: " Mr. Tuska was my lawyer when I was appointed administratrix, and attended to that business for me "; and U. Smith stated that " said power of attorney was written by Wal. J. Tuska, the acting attorney of said estate, on or about January 15, 1880."    With this evidence only before us, it is preposterous to ask us to declare that Mr. Tuska was not the attorney of respondent, but was the attorney of U. Smith.

Finally, if it be conceded that appellant cannot avail himself of the fact that the verdict and judgment are not sustained by the evidence, for the reason that, in the statement, it is not specified that the amount due appellant should have been deducted from the amount of rents collected. still he would be entitled to have that sum deducted from the judgment, or a new trial, by reason of the instructions of the court excepted to and specified in the assignments of error, wherein the jury were charged not to deduct from the rents any sum on account of any debt which Adams owed defendant.

Rehearing denied.