**In re CRYSTAL PALACE GAMBLING HALL, INC., Debtor.**

**Irwin S. SOPER, Phillip R. Soper, Nettie L. Soper and Sig Hall, Jr., Appellants,**

v.

**CRYSTAL PALACE GAMBLING HALL, INC., Appellee.**

BAP No. NV 83–1047 EVAs.
Bankruptcy No. LV 80–46.
Adv. No. 82–0769.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued April 21, 1983.

Decided Feb. 23, 1984.

H. Bruce Cox, Las Vegas, Nev., Robert M. Apple, Apple & Zervas, A Professional Corp., Las Vegas, Nev., for appellants.

Lenard E. Schwartzer, Schwartzer & Schwartzer, Las Vegas, Nev., for appellee.

Before ELLIOTT, VOLINN and ASH-LAND, Bankruptcy Judges.

## OPINION

ELLIOTT, Bankruptcy Judge:

This case is controlled by the real property laws of the State of Nevada. The issue is whether a lease and option to purchase real property held by the plaintiff-debtor-appellee, the Crystal Palace Gambling Hall (the "debtor"), is enforceable against the interests of the appellants. The bankruptcy court held that the lease and option is valid against their claims. We affirm.

### I.

The debtor operates a gaming establishment located in Laughlin, Clark County, Nevada (the "Gambling Hall"). The controversy concerns a parcel of approximately 20 acres of vacant land (the "parcel") located near the Gambling Hall which is potentially valuable to the debtor or any future owner of the Gambling Hall for expansion.

On February 1, 1969 E.L. Cleveland, the owner of the parcel granted a lease and option to purchase the parcel (the "lease-option") to an individual who, in 1972, assigned his rights to appellant Irwin Soper. The lease and option were to run for a 20 year period. Rent consisted of $2,400 per year but was payable only for the last 16 years of the lease. The option price was $50,000. Both the lease-option and assignment to Irwin Soper were duly recorded in 1973. It is undisputed that Irwin Soper held the lease-option as community property with his wife Nettie Soper who is also an appellant (the "Sopers").

On October 27, 1977 Irwin assigned the lease-option to the debtor (the "assignment"). Of the $150,000 paid in consideration of the assignment, $129,500 was in the form of a note from the debtor. Although significant interest payments were made upon the note prior to the filing of the debtor's Chapter 11 petition, no significant payment has even been made upon the principal. Although it was apparently intended that the assignment be held unrecorded in escrow as a method of securing the note, it was somehow recorded. Although Nettie was fully aware of the negotiations undertaken by her husband to assign the lease-option and of the assignment itself, she did not sign the assignment. However, she did not immediately challenge the conveyance.

In separate adversary proceedings in which Irwin Soper, but not Nettie Soper, was a party, the bankruptcy court found that any purported security interest was defeated by the avoiding powers conferred in Bankruptcy Code § 544(b).

The principal issue raised by Irwin and Nettie Soper is whether Nettie's failure to sign the assignment of the lease-option to the debtor renders that conveyance void.

■ Applicable Nevada law gives the spouses joint control of community property. Either spouse may transfer or encumber community property without the consent of the other subject to several exceptions. Nev.Rev.Stat. § 123.230. One of the exceptions is found in Nev.Rev.Stat. § 123.-230(3):

Neither spouse may sell, convey or encumber the community real property unless both join in the execution of the deed or other instrument by which the real property is sold, conveyed or encumbered and the deed or other instrument must be acknowledged by both.

Both Irwin and Nettie Soper claim that the assignment is void because the lease-option is "real property" and that Nettie failed to sign it. The trial court concluded that, for the purposes of the statute, neither the lease nor option components of the lease-option were "real property" in the hands of the Sopers. Moreover it found that Nettie's failure to manifest an objection to the conveyance for a substantial time estopped her from seeking to set aside the transfer. We agree.

### A.

Authority from the Nevada courts is scant as to whether a lessee's or optionee's interest in a parcel of land is in itself "real property." The Sopers primarily rely upon *Adams v. Smith,* 19 Nev. 259, 272, 9 P. 337, 342 (1886) in which the Nevada Supreme Court stated that a leasehold interest is "an interest in lands." *Adams* leaves obscure whether a distinction exists under Nevada law among an "interest in lands," "interest in real property," or "real property." Subsequent cases do not dispel this obscurity. See *Gottwals v. Rencher,* 60 Nev. 35, 92 P.2d 1000 (1939) (issue of whether leasehold interest is real property reserved after noting apparent conflict between *Adams* case and general common law rule).

Although it may indeed be anachronistic that such semantic distinctions have significance in modern property law, conceptual analysis cannot ignore the feudal origins of the concepts of "real" and "personal property." The Nevada legislature in modernizing that state's community property laws chose to draw an arbitrary line between property which could be disposed of by one spouse without the express endorsement of the other and property which does require such endorsement. In light of the paucity

of authority from the Nevada courts, the trial court properly looked to the general common law rule concerning the classification of leases and options as real or personal property.

The trial court concluded that, at common law, a lessee's interest in a lease was not "real property" but rather part of a class of interests in real property known as "chattels real." In modern nomenclature, "chattels real" are a form of personal property in a system of classification where all property is viewed as either real or personal. *See e.g., Callahan v. Martin*, 3 Cal.2d 110, 43 P.2d 788 (1935); *Hartman v. Drake*, 166 Neb. 87, 87 N.W.2d 895 (1958); *In re Barclay's Estate*, 1 Wash.2d 82, 95 P.2d 393 (1939); *Abraham v. Fioramonte*, 158 Ohio St. 213, 107 N.E.2d 321 (1952). We accord substantial deference to the interpretation of Nevada law by the bankruptcy judge sitting in Nevada. *United States v. Valley National Bank*, (C.A.9th 1975) 524 F.2d 199, 201.

The Sopers argue that the bankruptcy court acted improperly by failing to apply the doctrines of *res judicata* or law of the case in their favor on the issue of whether the lease-option is real property. In the prior adversary proceeding where the debtor prevailed in its attempt to void any alleged security interests held by Irwin Soper under Bankruptcy Code (Title 11 U.S.Code) § 544(b), the bankruptcy court filed a conclusion of law to the effect that the lease-option was an interest in real property. They object to the bankruptcy court's failure to apply this conclusion in the present adversary proceeding with application to Nev.Stat. § 123.230(3).

■ Speaking technically, the reference to *res judicata* is inapposite. That doctrine precludes further litigation of the same cause of action between the same parties and those that are said to be in privity with them. 1B *Moore's Federal Practice* ¶ 0.401 at 12 (1982). The issue here is whether the trial court erred by failing to apply a conclusion of law entered in a prior adversary proceeding to a subsequent action involving some of the same parties but arising in connection with a different cause of action. As such the Sopers' claim more technically may be said to invoke the doctrine of collateral estoppel which operates in litigation involving a different cause of action. The doctrine may be applied only where issues which have actually and necessarily been decided in previous litigation between the parties effect the outcome in the subsequent action. *Id.* Collateral estoppel may operate as to questions that are strictly matters of law. 1B *Moore's Federal Practice* ¶ 0.448 at 4242 (1982). Thus, an interpretation of law which was actually and necessarily made may well be binding in subsequent litigation between a set of litigants.

■ For a number of reasons, we cannot conclude that the trial court erred in failing to apply collateral estoppel in this case. First, we are aware of nothing in the record before us indicating that the issue was presented to the trial court. Second, the record before us does not show that the relevant conclusion of law was necessary to the judgment. Third, it is not clear that the legal issue decided in the prior proceeding is the same as the one now at issue. Although the conclusion that the lease-option is an interest in "real property" under Nevada law is stated in broad terms, it does not follow that the same conclusion would inevitably apply with regard to every potential legal problem that might arise concerning the characterization of an item of property as real or personal. The particular legal conclusion is appropriate. Thus the conclusion might be proper for one purpose, such as whether the state's recording laws apply to the property, but improper for other purposes such as how the state's tax laws apply.

Finally, the fact that Nettie Soper, who is probably the only proper party with standing to challenge the assignment of the lease-option, was not a party to the prior litigation is troublesome. Although the Sopers claim that Nettie was a privy of Irwin in connection with the prior judgment, this conclusion is not self-evident. To the extent Nettie was not in privity with

Irwin she is not bound by the prior judgment. To the extent Nettie is not bound by the prior judgment, "mutuality" is lacking concerning the ability of the parties to assert collateral estoppel. Under contemporary thinking, "mutuality" is not necessarily a prerequisite to the application of collateral estoppel even where, as here, the party who is not bound by the prior judgment seeks to assert collateral estoppel "offensively." *Parklane Hosiery v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). However, because of concerns about the fairness of unrestricted use of collateral estoppel in such situations, the Supreme Court has placed broad discretion in the trial courts to determine when collateral estoppel should apply. *Id.* 439 U.S. at 329–33, 99 S.Ct. at 650–53. In the initial litigation, the debtor apparently urged the conclusion of law upon the court that the Sopers now seek to use against it. In this situation it is within the discretion of the trial court to evaluate the fairness of applying collateral estoppel. We hold that it did not abuse its discretion.

The Sopers also allege the doctrine of "the law of the case" is applicable. That doctrine is a flexible rule of decision that is not to be applied rigidly. 1B *Moore's Federal Practice,* ¶ 0.404[1] (1982). Assuming the doctrine applies in this case, it is within the discretion of the trial court to digress from the law of the case as established by it. As an appellate tribunal, this panel is not bound by the trial court's law of the case. We are bound to reexamine for error legal determinations made by the trial court that are properly preserved as issues on appeal. *Id.*

### B.

The trial court did not rest its judgment solely upon its determination that the property was not real property for the purposes of Nev.Rev.Stat. § 123.230(3). It also invoked the doctrine of laches and estoppel in refusing to permit Nettie to assert the application of § 123.230(3). It relied primarily upon Nettie's failure to object to the assignment for five years during which the debtor relied upon its belief that an effective assignment had been made. Given that the very purpose of an option is to permit a person with a potential interest in an item of property to hedge against the possibility of future appreciation in the value of the property, and given that the Sopers themselves allege that substantial appreciation in the property has occurred, it is self-evident that the debtor will suffer significant prejudice if the assignment is voided.

We hold the trial court properly found that the doctrine of laches tempers the application of § 123.230(3). In *Neumann v. McMillan,* 97 Nev. 340, 629 P.2d 1214 (1981), a case heavily relied upon by the Sopers, the Nevada Supreme Court determined that the real property in question although nominally held by a married couple as joint tenants, was actually held as community property. Thus the court found that because the note and deed of trust at issue had been executed by the husband without the wife's knowledge, the conveyance was void as against the wife. However the court implicitly recognized a duty on the part of the wife to act without delay in asserting her rights when it noted as relevant the fact that the wife "*seasonably* filed the action to void the encumbrance." *Id.,* 629 P.2d at 1215 (emphasis added). Moreover the doctrine of laches as a general rule is well established in Nevada. *Noble Gold Mines Co. v. Olsen,* 57 Nev. 448, 66 P.2d 1005 (1937). We thus conclude that the Nevada Supreme Court has already recognized that § 123.230(3) is subject to the non-signing spouse's obligation seasonably to assert his or her rights. The court's finding that Nettie did not seasonably assert her rights in this case is fully supported by the record and will not be disturbed on appeal.

### II.

The debtor's claim to the lease-option is challenged from another quarter. This challenge is a result of the failure to pay property taxes on the parcel and the resulting actions taken by the local taxing authorities.

Prior to execution of the assignment by Irwin Soper to the debtor, the real property taxes, which were assessed against the original owner, had apparently been paid by the lessees. However, the taxes for the tax year 1977–78 consisting of $135.74 went unpaid and became delinquent on March 5, 1979.

Under Nevada law, when real property taxes go unpaid, a sale of the property does not immediately occur. If, after notice of delinquency is made, the property taxes are not paid prior to the first Monday in May, the county tax receiver is to make out a certificate authorizing the county treasurer to hold the property as trustee for a two year period subject to redemption. Nev. Rev.Stat. §§ 361.565–.570. In this case, the Clark County Tax Receiver issued such a certificate with respect to the parcel on May 1, 1979.

During the two year period, the property may be redeemed upon payment of the unpaid taxes, newly accrued taxes, interest and costs. No one redeemed the parcel within the two year period.

However, all rights are not extinguished at the end of the two year period. Upon expiration of the period, the tax receiver executes and delivers to the county treasurer a deed to the property. Nev.Rev.Stat. §§ 361.585, 361.590. Subject to exceptions not relevant here, this deed conveys the property to the county treasurer free of all encumbrances. Nev.Rev.Stat. § 361.590(5). Thereafter, the county is permitted to dispose of the property in several ways. Nev. Rev.Stat. §§ 361.595, 361.603, 361.604. But notwithstanding the expiration of the two year period, certain classes of persons having an interest in the property, including the owner or owners, are entitled to have the property "reconveyed" upon payment of the accrued taxes, interest, and costs if payment is made prior to final disposition by the county. Nev.Rev.Stat. 361.585(3), (4).

After the two year redemption period, but before the county had made any disposition of the parcel, Richard Hoover, who is a defendant in this action, but not a party to the appeal, obtained a quitclaim deed to the parcel from the sole heir of the original owner of the parcel who had died some years before. Apparently he paid $12,000 for the conveyance. Thereafter, on October 13, 1981, as owner of the property Hoover obtained a deed of reconveyance of the parcel by paying the accrued taxes and charges for the 1977–78 and the two subsequent years totalling $401.57. Later, in exchange for $20,000 Hoover conveyed the parcel to appellant Sig Hall, Jr. Shortly before the commencement of these adversary proceedings, Hall granted an option to purchase the property to Nettie Soper and her son Phillip R. Soper. Nettie Soper and Phillip R. Soper as grantee's of Hall join him in his allegations and arguments. For the purposes of convenience, the positions asserted by those three appellants are hereafter attributed simply to Hall as Nettie and Phillip Soper's rights with respect to these claims are purely derivative to Hall's.

Hall's principal claim is that upon expiration of the redemption period all other claims of ownership and rights in the property were extinguished. Thus he claims that when Hoover obtained the reconveyance of the property, he took, without limitation, the same title held by the county treasurer which was free and clear of all other claims including those of the debtor whose interest was allegedly extinguished.

The critical question then is, what is the nature of the title "reconveyed" under § 361.585(3). Hall suggests that by virtue of the mechanical operation of the statute the first eligible party to seek reconveyance under § 361.585(3) succeeds to the title which the county received under § 361.-590(5). In effect, Hall's theory is that § 361.585(3) creates a race among all the disparate persons specified in § 361.585(4) with the prize equal to unencumbered ownership of the property no matter how insignificant the winner's interest in the property was prior to the reconveyance.

The adoption of this interpretation would render meaningless the provision contained in § 361.585(4) that clearly contemplates the preservation of interests "as they ap-

pear." This is especially true as to reconveyances among the separate categories of possible persons.

Nor is Hall's interpretation compelled by the Nevada Supreme Court's decision in *McIntosh v. Burroughs*, 92 Nev. 417, 551 P.2d 1104 (1976) which is the sole source of authority on the question.

Although disclaiming any need for extensive interpretation of the statute, the court found the relationship between the parties of importance:

> The relationship of the present parties involved neither a fiduciary relationship, nor even circumstances from which any expectation of trust or reliance might arise. As appellants stated in their opening brief before this court: "Burroughs and McIntosh were naked tenants in common. They took under separate conveyances. They had no connection or relation with each other. They were strangers who happened to co-own property."
>
> \*   \*   \*   \*   \*   \*
>
> Under the circumstances, we believe the district court correctly determined that respondents bore appellants no obligation, fiduciary or otherwise, in regard to the property, and correctly determined that respondents were entitled to a decree quieting title thereto.

*McIntosh v. Burroughs*, 551 P.2d at 1105–1106. Although this decision undoubtedly establishes that the reconveyance of title under § 361.585(3) may leave extinguished the claims of other persons to the property, it also establishes that such a result does not automatically occur. Were the rule otherwise, the Nevada Supreme Court's careful analysis of the relationship between the parties in the *McIntosh* decision would be superfluous. The *McIntosh* court found it significant that the parties were "naked tenants in common" owing no duty to each other. Hoover's relationship with the debtor at the time he obtained the reconveyance was otherwise.

It was only through having obtained a quitclaim deed from the debtor's landlord, the original owner's heir, that Hoover obtained any right to seek reconveyance of the property. Having become the debtor's new landlord, he succeeded to the landlord's covenant of quiet enjoyment to the tenant which runs with the lessor's reversionary interest in the land. *Brookhaven Rialto Theatre Corp. v. Feiger*, 52 N.Y.S.2d 254 (App.Div.1945). One of the elements of that covenant is to protect the lessee from eviction through assertion of paramount title.

■ The lease-option contains no provision regarding the duty to pay the real property taxes upon the property. But, we hold that even if under the lease-option it was the duty of the lessee to pay the taxes, under the circumstances here at issue, the relationship between the landlord and tenant precludes the landlord from using the non-payment of taxes as a device for extinguishing the rights of the tenant. In particular we note the trifling amount of the unpaid taxes in relation to the value of the property, the absence of any *manifest* duty on the part of the lessee to pay the taxes, the fact that the debtor was not unambiguously a party within any of the categories of parties with a right to seek reconveyance under § 361.585(3), and the failure of the landlord to communicate with the lessee concerning the property or demand payment of the taxes either immediately before the expiration of the redemption period or at any time thereafter. We do not find it to be determinative in the context of the legal and factual considerations herein discussed that the debtor may have been orally notified at a hearing held in connection with its bankruptcy some eight months prior to the expiration of the redemption period that the taxes were delinquent.

The trial court's determination that it was the lessor's responsibility to pay the taxes was based upon the rule that in the absence of an agreement to the contrary, and unless the length or nature of the lease would make such a requirement inequitable, the duty to pay real property taxes remains with the lessor. 51C Corpus Juris Secondum, *Landlord & Tenant*, § 359 at 898–900 (1968); 49 Am.Jur.2d, *Landlord & Tenant*,

§ 354 at 365–67 (1970). Hall apparently concedes this rule, but argues that it does not apply where "overbalancing considerations" exist. *Id.* Here Hall points to the fact that no rent was due under the lease for almost five years. Although this feature of the lease coupled with the existence of the option to purchase is evidence that weighs against the usual presumption that the landlord is to pay taxes, we are unconvinced that this fact alone is enough to overturn the usual rule. In particular the fact that the land was vacant and that the annual taxes were less than $150.00 weakens the argument that the lessee was to pay taxes in lieu of paying rent.

In any event, the trial court found that the lease-option placed the duty of paying taxes upon the landlord. To the extent this conclusion is correct, it is beyond question that Hoover took the property subject to this obligation and that he cannot improve his title at the expense of his lessee.

Hall further sought to introduce evidence extrinsic to the written agreement that the intention of the original parties to the lease-option was to place the tax burden upon the lessees. The trial court excluded the evidence under the parol evidence rule. The rule prohibits the introduction of any evidence which adds to or varies the terms of a written agreement if the agreement appears to be complete and unambiguous, *Sims v. Grubb,* 75 Nev. 173, 336 P.2d 759 (1959), and applies to written leases. *De-Remer v. Anderson,* 41 Nev. 287, 169 P. 737 (1918). Here, the lease-option does not expressly deal with the obligation to pay taxes, but, the lease does contain an integration clause:

> [t]his lease contains the entire agreement of the parties with respect to the matters covered by the Lease and no other agreement, statement or promise made by any party, or any employee, officer or agent of any party, which is not contained in this lease shall be binding or valid.

In light of this affirmation in the agreement that no separate agreements exist an additional obligation to pay taxes cannot be inferred on the grounds that the agreement is ambiguous. *Alexander v. Simmons,* 90 Nev. 23, 24, 518 P.2d 160 (1974).

Hall claims that the parol evidence rule is only binding upon the persons who are parties to the document. Because the original signers of the lease-option are remote predecessors in interest of both Hall and the debtor, he claims the rule is not binding upon him. This position mischaracterizes the "exception" to the parol evidence rule which provides that non-parties to an agreement are not bound by it. As is made clear from authority cited by Hall, 9 *Wigmore on Evidence* § 2446 (1981), this "exception" to the parol evidence rule is merely a recognition of the fact that the parol evidence rule has no function, other than to render irrelevant, evidence which is proffered for the purpose of varying the terms of a written agreement. As such, the rule only affects persons who claim rights by or through the agreement. This is the position in which Hall and the debtor stand. The issue at hand is the proper characterization of rights in the property as successors in interest to the parties to the lease-option and as such are not "strangers" to the transaction no matter how many mesne assignments separate them from the original signatories.

In addition to claiming an unencumbered title by virtue of the conveyance to the county and subsequent reconveyance to Hoover, Hall characterizes himself as a bona fide purchaser for value without notice of the 1977 assignment. This argument is frivolous inasmuch as the lease-option and assignment were recorded long before either Hoover or Hall entered the picture. Each had constructive notice of both instruments by virtue of Nevada's recording laws. Nev.Rev.Stat. § 111.320.

### III.

The appellants also complain that the trial court's judgment should be disapproved on the basis of a litany of alleged procedural and jurisdictional defects. None requires reversal.

The litigation was conducted on an expedited basis apparently in order to ensure that judgment would be entered prior to the expiration of the stay of mandate entered in *Northern Pipe Line Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) thus avoiding potential jurisdictional problems. Appellants argue that they were given insufficient time to conduct discovery and resolve a conflict of interest between some of the appellants as a result of this expedited treatment. We think the trial court did not abuse its discretion in refusing to permit a continuance. Bankruptcy courts have traditionally been acutely aware of the need to resolve issues affecting the administration of estates in bankruptcy with speed and efficiency. Any alleged conflict of interest between the appellants should have been apparent substantially before appellants sought a continuance. We think no substantial prejudice was suffered by the appellants especially in light of the fact that the merits of this case turn almost exclusively upon issues of law. There is little doubt that the appellants had full access to all the facts necessary and relevant to presentation of their case.

This matter was commenced by the debtor as an action to quiet title to the parcel. Appellants correctly asserted that such an action was an inappropriate pleading device to resolve the conflict between the parties. They sought to force the debtor to file a new complaint or modify its complaint to resolve pleading difficulties. Ultimately the trial court construed the debtor's complaint as an application for declaratory judgment and denied the appellants' request that it be forced to formally cure various defects in its pleading.

Notwithstanding the pleading defects, the appellants were given fair notice of the claims alleged by the debtor and a fair opportunity to contest those allegations. The trial court was fully cognizant of the legal issues involved and carefully considered the rights of the parties. The trial court did not abuse its discretion in its liberal construction of the pleadings. *See*

Fed.R.Civ.P. 1; Bankruptcy Rule 903. That a clerical error in the judgment may exist in that one of the appellants' counterclaims was not disposed of is not in itself a serious error. *See* Fed.R.Civ.P. 60(b), made applicable by Bankruptcy Rule 924. Neither is that clerical error evidence that the trial court failed to give the merits of the case adequate consideration.

Appellants note that § 213 of the 1978 Bankruptcy Act (Pub.Law 95–598. the "1978 Act") which amends 28 U.S.C. § 451 to include the bankruptcy courts within the definition of "court of the United States" is effective only on April 1, 1984. On the basis of this provision, they argue that the bankruptcy courts have no authority to enter declaratory judgments until April 1, 1984 and that therefore the court was not authorized to enter the judgment in this case. There is no merit in this claim. Section 249 of the 1978 Act more specifically deals with declaratory judgments and that section was effective October 1, 1979. 1978 Act § 402(c). Many of the jurisdictional changes provided for in the 1978 Act are nominally effective only in 1984. Yet the transition features clearly contemplate that the bankruptcy courts will exercise expanded jurisdiction during the transition period from October 1979 to April 1984. 1978 Act § 405(b). Appellants' interpretation of the delayed effective date of § 213 is inconsistent with the statutory structure governing the transition period. *See,* 1 *Collier on Bankruptcy* (15th Ed.1983) ¶ 3.01[8] at 3–126.

Appellants argue that *Northern Pipe Line Construction Co. v. Marathon Pipeline Co., supra,* limits the authority the bankruptcy court might otherwise have with respect to declaratory judgments. Although the proper interpretation of *Marathon* is the subject of vigorous debate, in making its decision prospective and in staying its mandate, the court made clear that with respect to a decision, such as this one, entered prior to termination of its stay, *Marathon*-type constitutional objections were not to be considered. *See United States v. Security Industrial Bank,* 459 U.S. 70, 74, n.

5, 103 S.Ct. 407, n. 5, 74 L.Ed.2d 235 (1982). Hence, *Marathon* has no bearing upon this case.

Finally the appellants dispute the fairness of the judgment upon general equitable grounds. In particular the Sopers point to the alleged unfairness resulting from the avoidance of their security interest in the lease-option. They charge this action renders the debtor's hands "unclean." The exercise of bankruptcy avoiding powers by the representative of an estate in bankruptcy is a fiduciary obligation that furthers the policies of the bankruptcy laws concerning the fair distribution of the limited assets of insolvent debtors. As such it cannot be characterized as inequitable conduct or in any fashion soil upon the hands of the representative of the estate.

The trial court's determination that the appellants will not suffer an "unfair" loss as a result of its judgment is fully supported by the record.

The judgment is AFFIRMED.