In re LEMONS & ASSOCIATES, INC., a Nevada corporation, dba Interwest Leasing, Inc., a Nevada corporation, formerly Lemons Leasing, Inc., a Nevada corporation, dba Interwest Development, Inc., a Nevada corporation, formerly Home Associates, Inc., Debtors.

Bankruptcy No. BK–R–85–273.

United States Bankruptcy Court, D. Nevada.

Jan. 14, 1987.

See also 67 B.R. 198.

Michael S. McManus, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for J. Stephen Lemons, movant.

William D. Cope, Reno, Nev., for Leroy R. Bergstrom (Trustee), Lemons & Associates, Inc., and affiliated entities.

## MEMORANDUM DECISION

JAMES H. THOMPSON, Bankruptcy Judge.

### FACTS

On June 21, 1985, this court approved a compromise between J. Stephen Lemons and the Trustee for the debtor, Lemons & Associates, Inc., pursuant to which, among other things, Mr. Lemons conveyed real and personal property to the trustee. One of the assets transferred to the trustee was Mr. Lemons' residence. The compromise provided that the trustee was to sell the residence and that $45,000 of the proceeds be placed in a "spendthrift trust" of which the Trustee of Lemons & Associates, is the trustee.[1] The $45,000 held in trust is to be

---

1. The $45,000 figure used to fund the "spendthrift trust" arrangement was based on the debt- or's homestead exemption of $90,000. Testimony at the hearing indicated that this amount

used to pay professionals representing Mr. Lemons in connection with potential claims arising out of the Lemons and Associates, Inc. bankruptcy. Any amounts not paid to professionals retained by Mr. Lemons for the specified purpose will revert to the trustee. In addition, the trustee is to receive any interest earned on the $45,000.

At the hearing on the compromise, Wells Fargo Credit Corporation, an unsecured creditor of Mr. Lemons, objected to the compromise claiming that the assets being transferred to the Lemons & Associates Trustee should be subject to Wells Fargo's personal claims against Mr. Lemons. In other words, Wells Fargo argued that the transfer of assets from Mr. Lemons to the Lemons & Associates Trustee was preferential. The court rejected the argument since Mr. Lemons was not a debtor under the bankruptcy code and was therefore free to prefer one creditor over another. The court even suggested that Wells Fargo might want to consider filing an involuntary bankruptcy petition against Mr. Lemons and seek to set aside the compromise. Wells Fargo did not take this action.

After the compromise was approved, Wells Fargo obtained a default judgment against Mr. Lemons. At the time the judgment was recorded, the trustee had not yet recorded the conveyance provided for in the compromise. Thus, Mr. Lemons, and his ex-wife, Barbara Lemons, still appeared as the record owners of the property. After the trustee obtained Barbara Lemons' signature, the deed was recorded. As a result of this sequence of events, the title of record shows that the trustee's interest in the property is subject to Wells Fargo's judgment lien. The property was ultimately sold by the trustee free of the lien subject to a stipulation with Wells Fargo requiring the trustee to hold the proceeds of the sale in trust pending a resolution of the dispute to the proceeds.

Mr. Lemons and the trustee have brought motions to enforce the order approving the compromise. The trustee also has moved for attorneys' fees incurred due to violations of § 362(a) by Wells Fargo. Wells Fargo raises several procedural and substantive issues in its opposition to these motions. Wells Fargo argues that the trustee's motion is procedurally defective because it should have been brought as an adversary proceeding. Substantively, Wells Fargo primarily argues that the transfer from Mr. Lemons to the trustee is void because Mrs. Lemons did not join in the execution of the deed. Wells Fargo also argues that the approval of the compromise and transfer of the property to the trustee was a fraudulent conveyance. Finally, Wells Fargo argues that the provisions of the compromise do not create a valid spendthrift trust under Nevada law.

## PROCEDURAL ARGUMENT

■ Wells Fargo argues that the trustee should be required to bring an adversary proceeding under Bankruptcy Rules 7001(2) and (9) to obtain declaratory relief regarding the validity, priority, or extent of its lien.

Bankruptcy Rule 9005 allows the court "to order the correction of any error or defect or the cure of any omission which does not affect substantial rights." All parties of interest were properly noticed and detailed points and authorities were submitted. The legal issues presented in the pleadings have been orally argued. Further, there is no dispute regarding material issues of fact. Requiring the trustee to spend additional time and incur additional expenses to file a complaint raising the same legal issues now before the court would be a waste of judicial as well as estate resources. Deciding the legal issues as the matter is now presented to the court does not prejudice any substantial rights of Wells Fargo. Therefore, the court will address the issues presented in the context of a motion for summary judgment. *See In*

---

could have been retained by Mr. Lemons and could not be reached by judgment creditors or the trustee in any event. *See* Partial Transcript of Proceedings, Motion to Approve Settlement Agreement With Steve Lemons, p. 6 (June 20, 1985).

*re Mortenson,* 41 B.R. 827, 828 (Bankr.D.S. D.1984).

## VALIDITY OF THE TRANSFER FROM MR. LEMONS TO THE TRUSTEE

■ Wells Fargo places great emphasis on NRS 123.230(3) which provides:

A spouse may, by written power of attorney, give to the other the complete power to sell, convey or encumber any property held as community property or either spouse, acting alone, may manage and control community property ... with the same power of disposition as the acting spouse has over his separate property, except that:

. . . .

3. Neither spouse may sell, convey or encumber the community real property unless both join in the execution of the deed or other instrument by which the real property is sold, conveyed or encumbered, and the deed or other instrument must be acknowledged by both.

Wells Fargo's argues that the trustee did not receive any interest in the real property conveyed pursuant to the compromise because Barbara Lemons had not signed the deed conveying the real property to the trustee until after Wells Fargo recorded its judgment lien against the property. The trustee argues that the estate took title to the property at the time the compromise was approved and that the recording Wells Fargo's judgment lien was a violation of the automatic stay to the extent Wells Fargo was attempting to obtain an interest in the estate's property.

Whether NRS 123.230(3) can be relied upon by a judgment lien creditor to avoid a conveyance of real property where one spouse has not joined in the execution of documents conveying the real property has not been addressed by the Nevada Supreme Court. In *In re Crystal Palace Gambling Hall, Inc.,* the Bankruptcy Appellate Panel considered the issue of whether a spouse who failed to sign the assignment of a lease option agreement rendered a conveyance void. 36 B.R. 947, 950 (Bankr. 9th Cir, 1984). The *Crystal Palace* panel affirmed the trial court that upheld the assignment of the lease option.

The trial court in *Crystal Palace* found that the lease option was not real property for the purposes of NRS 123.230(3) even though it had found that it was real property in an earlier adversary proceeding. 36 B.R. at 951. On appeal, the spouses argued that former adjudication principles should govern the issue of whether the lease option was real property. In discussing this issue, the appellate court indicated that "the fact that Nettie Soper [the nonsigning spouse], *who is probably the only proper party with standing to challenge the assignment of the lease-option,* was not a party to the prior litigation is troublesome." *Id.* (emphasis added). On the collateral estoppel issue, the court went on to hold that the lower court did not abuse its discretion in holding that the lease-option was not real property for the purpose of NRS 123.230(3). *Id.* at 952.

The appellate panel held that the lower court properly found that the lease-option was not real property. Therefore, NRS 123.230(3) was not relevant to the decision. However, since the lower court also used the doctrines of laches and estoppel in reaching its decision on the application NRS 123.230(3), the appellate panel discussed these issues and held that these equitable doctrines temper the application of NRS 123.230(3). *Id.* The bankruptcy appellate panel based its holding on language in *Neumann v. McMillan,* 97 Nev. 340, 629 P.2d 1214 (1981), from which the court found an implicit duty on the nonsigning spouse to "act without delay in asserting [his or her rights under NRS 123.230(3)]." 36 B.R. at 952.

The *Neumann* decision affirmed a state trial court decision that voided a deed of trust on real property given by one spouse without the other spouse's consent. In addition to the implicit duty of the non-signing spouse to act without delay found by the *Crystal Palace* court, the case is helpful because of one of the trial court's findings of fact. The trial court in *Neumann* found that "because Mrs. King had no

knowledge of the encumbrance placed upon the community property by Mr. King during the pendency of the divorce, she did not ratify said encumbrance by signing the property settlement agreement." 97 Nev. at 341, 629 P.2d at 1215. This trial court finding in *Neumann* suggests that the non-signing spouse can ratify actions taken by the other spouse and that rules of agency law are applicable with respect to NRS 123.230(3). Thus, NRS 123.230(3) would not render a real property transaction absolutely void, but merely voidable by the non-signing spouse. *Neumann* further suggests the statute is designed to protect the non-signing spouse and should not be used by third parties to invalidate transfers that both spouses find beneficial.

While some community property states have decided that such statutes render non-complying transactions absolutely void, this court believes, based on the decisions that have interpreted NRS 123.230(3), that the Nevada Supreme Court would follow those jurisdictions which hold that these non-complying transactions are merely voidable, and then only at the instance of the non-signing spouse.

■ It follows then that the execution of the deed transferring real property from Stephen Lemons to the Lemons and Associates Trustee effectively conveyed the community real property to the trustee subject to being set aside under NRS 123.230(3) only by Barbara · Lemons. When Wells Fargo recorded its judgment lien against Stephen Lemons the real property had already been effectively transferred to the trustee and was property of the estate. Reliance by Wells Fargo on the state of record title at the time its judgment was recorded is misplaced because Wells Fargo had actual notice of all of the facts and circumstances regarding the transfers to the trustee. Wells Fargo's attempt to obtain an interest in estate property was a violation of the automatic stay. However, since the violation does not appear to have been willful, sanctions under 11 U.S.C. § 362(h) are not deemed appropriate.

## FRAUDULENT CONVEYANCE ARGUMENT

■ Wells Fargo argues that the post-petition approval of the compromise and the transfer of Mr. Lemons' property to the trustee constituted a fraudulent conveyance under NRS 112.050 which provides that:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

When the court approved the compromise, Wells Fargo argued that if the trustee were to obtain Mr. Lemons' assets as a result of the compromise, and judgment obtained against Mr. Lemons personally would in all probability be worthless. Thus, Wells Fargo in effect presented the fraudulent conveyance argument to the court at the time the compromise was approved.

Responding to Wells Fargo's argument, the court suggested that the transfer might constitute a preference and that Wells Fargo had the option of commencing an involuntary bankruptcy action against Mr. Lemons in an effort to have the transfers set aside.

Although Wells Fargo objected to the compromise as a personal creditor of Stephen Lemons, there is no indication that the court ignored Wells Fargo's interests when it approved the compromise. The court approved the compromise being fully advised of the position of Wells Fargo. Since Wells Fargo's position was before the court and rejected at the time the compromise was approved, the court will not again consider it.

## VALIDITY OF SPENDTHRIFT TRUST PROVISIONS

■ Wells Fargo argues that the provisions of the compromise that call for the creation of a spendthrift trust are unenforceable under Nevada law. The argu-

ment is based on chapter 166 of the Nevada Revised Statutes and *Ambrose v. First National Bank of Nevada*, 87 Nev. 114, 482 P.2d 828 (1971). Under Nevada law, the settlor may not be the beneficiary of a spendthrift trust and such a trust must provide for the support and maintenance of the beneficiary. The "spendthrift trust" arrangement contemplated in the compromise merely provides for the payment of Mr. Lemons' legal fees related to this bankruptcy case. Therefore, it would not satisfy the Nevada spendthrift trust requirements regardless of who the settlor is.

If the provisions in the compromise regarding the funds set aside to fund the "spendthrift trust" arrangement are invalid, a central purpose of the compromise is frustrated. As a court of equity, a bankruptcy court may look through form to the substance of a transaction and devise new remedies where those at law are inadequate. *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir.1986). Further, it can modify its order if no intervening rights have become vested in reliance thereon. *Id.*

The parties to the compromise merely intended that funds be set aside for a specific purpose and used the term "spendthrift trust" inartfully to describe the arrangement. Whether the arrangement met the legal requirements for a valid spendthrift trust under Nevada law was not a crucial consideration.

## CONCLUSION

Based on this memorandum decision, the compromise is again approved and the trustee directed to fund the "spendthrift trust" arrangement described in the compromise and to disburse those funds as provided therein.

This memorandum decision constitutes the court's findings of fact and conclusions of law in the above matter pursuant to Bankruptcy Rule 7052 and Fed.R.Civ.P. 52. With respect to both motions before the court, counsel for the trustee is directed to submit an order and judgment consistent with this decision in accordance with Bankruptcy Rule 9021.